■ In the Matter of CANDIE LEE W., a Child Alleged to be Permanently Neglected. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent, v ALBERTA X., Appellant. — Appeal from a judgment of the Family Court of Clinton County (Feinberg, J.), entered October 21, 1981, which adjudged respondent's daughter to be permanently neglected and directed that adoption proceed. This proceeding was commenced to permanently terminate the parental rights of respondent to the guardianship and custody of her daughter upon a petition of the Clinton County Commissioner of Social Services, dated July 28, 1981, pursuant to article 6 of the Family Court Act and section 384-b of the

Social Services Law.* The child was born on February 6, 1979. On February 27, 1979, respondent signed a voluntary placement agreement placing her child in foster care with the Department of Social Services. An initial neglect petition was adjourned in contemplation of dismissal on May 18, 1979, continuing foster care placement. A further hearing held March 19, 1980 resulted in a finding of neglect, and foster care was ordered continued. The instant petition was commenced on the basis of permanent neglect (Social Services Law, § 384-b, subd 4, par [d]), and essentially stated that despite diligent efforts made by the department to "encourage and strengthen the parental relationship", respondent failed for a period of more than one year after placement "continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so" (Social Services Law, § 384-b, subd 7, par [a]). Following fact-finding and dispositional hearings, the Family Court granted the petition and this appeal ensued. Initially, respondent argues and petitioner concedes that the standard of proof employed by the fact finder — a fair preponderance of the evidence — was unconstitutional. We agree. In *Santosky v Kramer* (455 US 745), the United States Supreme Court concluded that "[b]efore a State * * * may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence" (*id.*, at p 603). This determination, however, does not end our inquiry. When a plenary hearing has, as here, already been conducted, this court is authorized to review the sufficiency of the Family Court's determination under the more rigorous clear and convincing evidence standard (see *Matter of John AA.*, 89 AD2d 738; *Matter of Janet AA.*, 88 AD2d 670). We next consider respondent's contention that since she "was to some degree mentally retarded", petitioner was obligated to bring the petition pursuant to section 384-b (subd 4, par [c]) relating to the termination of a mentally ill or retarded parent's rights to her child. We disagree. The statute provides five distinct bases upon which to terminate parental rights, and the fact that the record indicates that a parent suffers from a mental illness does not preclude an agency from pursuing termination on the basis of permanent neglect where supported in the record (see *Matter of Hime Y.*, 52 NY2d 242). The statutory definition of a permanently neglected child anticipates a parent "physically and financially" able to care for that child (Social Services Law, § 384-b, subd 7, par [a]). In this respect, we may not, as respondent suggests, "equate mental and physical capacity" (*Matter of Hime Y.*, 52 NY2d 242, 250-251, *supra*). Thus, the fact that the present record evidences the mother's mental disability does not, *ipso facto,* establish a physical disability exonerating her from the obligation to plan for her child, nor preclude petitioner from seeking to terminate her rights for failing to meet this responsibility. To establish permanent neglect, petitioner was required to demonstrate diligent efforts to encourage and strengthen the parental relationship (Social Services Law, § 384-b, subd 7, par [a]). Careful examination of the record leaves little doubt that petitioner undertook substantial efforts to promote this relationship. Respondent was afforded an opportunity to participate in several programs involving numerous agencies, including the Literacy Volunteers, the Association for Retarded Children (ARC), the Pelican Club (for new parents), the Capable and Loving Mothers (CALM) program, Parents Anonymous and the Mental Health Clinic. Transportation was provided to allow respondent to attend these programs, and also to accommodate visitation with the child. The record confirms painstaking efforts on petitioner's part to encourage the parent-child relationship, and to assist respondent in the fundamental skills of child rearing. Petitioner's caseworker testified "we

---

* Petitioner has filed an abandonment petition against the alleged father which is not at issue on this appeal.

exhausted every available resource that we know of for her". It is clear that petitioner proceeded in recognition of respondent's handicap and made a sincere attempt to help her to overcome it. Accordingly, even under the clear and convincing evidence standard of proof, petitioner has satisfied its burden on the element of diligent efforts. Petitioner was further required to establish respondent's failure to substantially and continuously or repeatedly maintain contact or plan for the future of the child, although physically and financially able to do so (Social Services Law, § 384-b, subd 7, par [a]). As noted above, respondent's mental disability does not equate to physical inability for purposes of this provision (*Matter of Hime Y.,* 52 NY2d 242, *supra*). Nor has there been any determination of physical disability. Even though a parent may maintain contact with a child, the failure to plan for the future of that child, in and of itself, is sufficient to support a determination of permanent neglect (*Matter of Orlando F.,* 40 NY2d 103). The record demonstrates respondent's good-faith effort to establish a relationship with her child and develop her parental skills. Good faith, however, is not determinative of whether a parent has adequately met her obligation to develop a viable plan (Social Services Law, § 384-b, subd 7, par [c]). Considered in its entirety, the record evinces a complete lack of any meaningful planning on respondent's part to facilitate the return of her child to a stable home life. Among other things, respondent was unable to establish a stable residence, having changed her residence at least 20 times in a brief interval, often frustrating respondent's visitation and counseling efforts. Dr. Santora, the clinical psychologist for the County Mental Health Clinic, testified that respondent failed to regularly attend a weekly group counseling session, and opined that she was unable to attend to her own needs, let alone those of a child. Petitioner's role as representative payee of respondent's Social Security and S.S.I. payments since 1975 is further evidence of her incapabilities to care for herself or the child. Respondent also failed to complete a 13-week personal adjustment training course provided by the ARC, repeatedly missed scheduled visitation appointments, and failed to secure employment. Although we recognize that "the adequacy of the parents' plan must not be evaluated with reference to unrealistically high standards" (*Matter of Leon RR,* 48 NY2d 117, 125), it is unfortunate, but clear, that respondent was unable to formulate and act to accomplish a feasible plan for her child. In our view respondent's failure to project a future course of action has been established by clear and convincing evidence presenting no reason to disturb the Family Court's determination (*Matter of Orlando F.,* 40 NY2d 103, *supra; Matter of Amos HH,* 59 AD2d 795). Judgment affirmed, without costs. Mahoney, P. J., Kane, Casey, Mikoll and Weiss, JJ., concur.