OPINION OF THE COURT
 

 Simons, J.
 

 This is an appeal from an order terminating respondent’s parental rights to her child, Star Leslie W., because of permanent neglect (Social Services Law, § 384-b, subd 4, par [d]; subd 7). To support that order the statute requires proof before Family Court that respondent failed to maintain contact with or plan for the future of her child for a period of one year after the child came into the custody of an authorized agency notwithstanding the agency’s diligent efforts to encourage and strengthen the parental relationship. Respondent contends that petitioner failed to establish neglect under the statute by clear and convincing evidence (see
 
 Santosky v Kramer,
 
 455 US 745;
 
 Matter of Michael B.,
 
 58 NY2d 71) but more particularly she claims that the order should be reversed because the child was not in the custody of an authorized agency at the time the petition was filed and because the petition was not filed until several months after the one-year period of neglect found by the court. Family Court granted the petition and the Appellate Division affirmed by a divided court. We now affirm its order.
 

 Respondent, a foster child herself, lived with her foster family from 1965 until 1977. She was 18 years old when she left.. On July 19, 1979 she gave birth to Star Leslie W. After attempting unsuccessfully to care for the baby for a week she took Star to the home of her former foster mother and left her there. Respondent’s foster parents were subsequently placed on foster parent status for Star in August so they could be paid, respondent signing a voluntary commitment of the child to the Commissioner of Social Services for that purpose. He subsequently transferred care to
 
 *141
 
 Leake & Watts Children’s Home which in turn transferred her to the foster parents. Star resided with them continuously until July, 1982, except for a period of one month in December-January, 1981-1982 when she lived with respondent. In July, 1982, after the foster mother became ill and was no longer able to care for Star, petitioner placed her in a preadoptive home. During the time the foster parents had Star, respondent was given unlimited visitation rights. She saw her child six times in 1979 and six times in 1980. The visits were either at the foster home or arranged by petitioner at. its clinic during examinations of the child. To the knowledge of petitioner, respondent did not see the child between October, 1980 and June, 1981.
 

 During 1979 and 1980 respondent changed residences several times leaving her own apartment to live variously with her boyfriend, Robert, and her sister in The Bronx and then moving to Yonkers to live with another sister before returning to Robert. She was frequently out of contact with the petitioner for extended periods of time, moving without leaving a forwarding address and failing to notify it of the changes. Petitioner’s social worker testified that she could not locate respondent for a period of four months after April, 1980 and that respondent moved to Yonkers in October, 1980 and did not reappear until June, 1981. The social worker talked with respondent in November, 1980 and learned of her move to Yonkers but respondent would not tell the social worker how to contact her there.
 

 In February, 1981 when petitioner could not locate respondent, it instituted a proceeding to terminate her parental rights based upon a one-year period of permanent neglect. Respondent apparently learned of this through her foster mother and appeared at the intake hearing in June, 1981. At respondent’s urging, the petition was withdrawn in October, 1981 and plans were made to deliver Star to her temporarily at her boyfriend’s apartment, where she was then living. On December 17, 1981, the transfer was completed but it ended on January 13, 1982 when respondent left the apartment and returned with the baby to her foster mother. Although respondent contended at trial that she left because there was no heat in the apartment, Family
 
 *142
 
 Court accepted contrary evidence and found that she left because her boyfriend had thrown her out of the apartment after a violent fight which necessitated a call to the police. Two days later respondent returned to the apartment with her foster parents to recover her clothes. She went upstairs and, during the two hours they waited, failed to come down. Star remained in the foster home, and respondent visited her there five times between January and July, 1982. Star is now five years of age. During her life she has resided with respondent only one week after her birth and for the period from December 17, 1981 until January 13, 1982.
 

 In February, 1982 petitioner instituted this proceeding. The natural father was served by publication and failed to appear.
 

 I
 

 We have recently stated our strong determination that before terminating a parent’s rights the State must first attempt to reunite the parent with her child. Thus, the threshold inquiry by the court in any neglect proceeding must be whether the agency exercised diligent efforts to strengthen the parental relationship
 
 (Matter of Sheila G.,
 
 61 NY2d 368). Those efforts must include counseling, making suitable arrangements for visitation, providing assistance to the parents to resolve or ameliorate the problems preventing discharge of the child to their care and advising the parent at appropriate intervals of the child’s progress and development (Social Services Law, § 384-b, subd 7, par [f];
 
 Matter of Sheila G., supra,
 
 at pp 384-386;
 
 Matter of Star A.,
 
 55 NY2d 560). These measures are not exclusive. The agency is free to attempt other reasonable and practical 'means to encourage and strengthen the family relationship.
 

 Additionally, neglect may be found only after it is established that the parent has failed substantially and continuously or repeatedly to maintain contact with or plan for the future of the child although physically and financially able to do so (Social Services Law, § 384-b, subd 7, par [a]). The requirement is several: the parent must maintain contact with the child and also realistically plan for her future. A
 
 *143
 
 default in performing either may support a finding of permanent neglect
 
 (Matter of Orlando F.,
 
 40 NY2d 103, 110;
 
 Matter of Candie Lee W,
 
 91 AD2d 1106;
 
 Matter of John AA.,
 
 89 AD2d 738). Insubstantial or infrequent contacts with the child are insufficient (Social Services Law, § 384-b, subd 7, par [b]) and the planning requirement contemplates that the parent shall take such steps as are necessary to provide a home that is adequate and stable, under the financial circumstances existing, within a reasonable period of time. Good faith alone is not enough: the plan must be realistic and feasible (Social Services Law, § 384-b, subd 7, par [c]).
 

 After a fact-finding hearing, Family Court found that respondent had maintained contact with Star, notwithstanding respondent’s absences for extended periods. It found, however, that respondent had failed to plan for her child’s future, despite the agency’s diligent efforts, and it therefore granted the petition and permanently terminated respondent’s parental rights. After a dispositional hearing, it transferred custody to petitioner and the Commissioner of Social Services for adoption. At the Appellate Division, all the Judges agreed that respondent had failed to plan for the child. Two Judges dissented because they believed that petitioner had not made diligent efforts to reunite respondent with her child. Justice Asch also found procedural irregularities which in his judgment required reversal.
 

 The evidence in the record supports Family Court’s finding of diligent efforts to assist respondent. At the time of the birth respondent lived in a small apartment by herself. Petitioner had no objection to the accommodations but respondent did not want to care for the baby there so petitioner’s social worker referred her to the Home’s housing office. Respondent went to the housing office where she was given referrals to investigate but she failed to follow through on them. Although it was clear that housing was respondent’s main problem, she failed to take any concrete steps to solve it. Apparently her only plan to establish a home for Star was to marry her boyfriend. In the meantime, she moved frequently, staying with him intermittently after 1979, and leaving twice for extended periods of time during which she failed to notify the agency of her
 
 *144
 
 change of address or how she could be reached. Nevertheless, petitioner’s staff counseled her as they could and it continued foster care in respondent’s own former foster home, a familiar setting, and encouraged her to visit often and participate in the child’s upbringing. It arranged for clinic visits for the child and informed the mother of them so she could be present to visit and check the baby’s progress.
 

 Notwithstanding petitioner’s lack of success and its inability to maintain regular contact with respondent because of her moves, the agency agreed to withdraw the 1981 petition after she returned that summer and made renewed efforts to reunite mother and child by encouraging future visitation and by arranging for a trial period when the child would live with respondent and her boyfriend. It was planned that respondent would obtain public assistance for the child, find day care help and return to school. Hopefully she and her boyfriend would marry. After several visits to the apartment with Star to acquaint her with her mother and the surroundings, Star was transferred to respondent on December 17. The agency supervised the trial arrangement, visiting the apartment periodically, helping with the adjustment of the assistance budget and attempting to arrange day care for the child so that respondent could continue her schooling. It was only after this trial effort had failed, respondent had returned the baby to her foster parents and had failed to return to care for her that petitioner ceased its efforts and started this proceeding. It was not required to do more. The statute requires only reasonable efforts and this record is devoid of any commitment by respondent to plan for herself and her baby or to follow through on suggestions and efforts made by petitioner’s staff (see
 
 Matter of Orlando F.,
 
 40 NY2d 103,
 
 supra; Matter of Candle Lee W,
 
 91 AD2d 1106,
 
 supra; Matter of John AA.,
 
 89 AD2d 738,
 
 supra).
 
 An agency which has tried diligently to reunite a mother with her child but which is confronted by an uncooperative or indifferent parent is deemed to have fulfilled its duty
 
 *
 
 (see
 
 Matter of Sheila G.,
 
 61 NY2d 368, 385,
 
 supra).
 

 
 *145
 
 Respondent contends further that the order may not stand because petitioner did not establish that the child was in the care of an authorized agency at the time the proceeding was commenced, as the statute requires (Social Services Law, § 384-b, subd 7, par [a]). She maintains that the agency is unable to prove either its right to care for the child or that neglect continued for one year after it legally received her. The argument is premised on two alternative grounds, first that the commitment document is not to be found in the record and second, that custody, even if lawfully acquired in 1979, was terminated by the delivery of Star to respondent December 17, 1981 and no new commitment was acquired after her return to the foster parents.
 

 We find no merit to either contention. The petition identified the commitment and alleged that respondent had executed it on August 27, 1979, petitioner’s social worker testified to the execution without objection, and respondent’s counsel did not challenge the sufficiency of the evidence on this ground at the hearing. Having failed to raise the issue at that time, she may not do so now (see, generally, Cohen and Karger, Powers of the New York Court of Appeals [rev ed], § 162).
 

 Nor was the custody of petitioner terminated by the delivery of the child t'o respondent in December, 1981. The transfer of care was temporary and made on a trial basis. Respondent does not contend otherwise. Indeed she testified that she understood that she was on “probation” when she received Star. On this appeal she urges only that there is no authority for such a trial transfer of a child to her mother. The statute, however, mandates diligent efforts, defining them as “reasonable attempts * * * to assist, develop and encourage a meaningful relationship between the parent and child” (Social Services Law, § 384-b, subd 7, par [f]). Four types of efforts are enumerated in the statute and petitioner engaged in each of them trying to strengthen respondent’s relationship with her child. For over two years it was unsuccessful. The statute also provides, however, that those specified measures are not exclusive, and there is no reason why, when it became
 
 *146
 
 apparent that respondent intended to remain with her boyfriend, and considering her obvious, if sporadic, interest in her child, petitioner could not reasonably assume “diligent efforts” permitted it to try this further alternative in an attempt to reunite the family. Such arrangements, carefully and deliberately made and agreed to, are well within an agency’s implied powers under the statute. Indeed, only a cynical interpretation of the law would attach to such good-faith efforts the peril of frustrating further termination proceedings if the experiment failed and neglect was apparent. Nor did the agency violate respondent’s rights when, as she claims in a related argument, it refused her oral request to return the child after she left her with her foster parents in January, 1982. The statute provides that the parent’s notice to the agency to return the child must be written (Social Services Law, § 384-a, subd 2, par [a]).
 

 Finally, respondent objects to the determination at the fact-finding hearing because Family Court and the Appellate Division found neglect for the period January, 1980 to June, 1981, a period ending several months before this proceeding was instituted in February, 1982. Her contention is that the period of neglect must be the one-year period prior to the institution of proceedings. The short answer to that contention is that the Legislature has provided for termination if the parent is chargeable with conduct constituting neglect for a period of “one year following the date such child came into the care of an authorized agency” (Social Services Law, § 384-b, subd 7, par [a]). The statute contemplates a continuous period of one year at any time after the child’s placement (see
 
 Matter of Norma Jean K.,
 
 81 AD2d 919;
 
 Matter of Melanie Ruth JJ,
 
 76 AD2d 1008;
 
 Matter of Jones,
 
 59 Misc 2d 69; Gordon, Terminal Placements of Children and Permanent Termination of Parental Rights: The New York Permanent Neglect Statute, 46 St John’s L Rev 215, 233-234). That construction is consistent with the common-law rule of abandonment, which has been held to provide that a parent has no right to block the adoption of a child she has abandoned, notwithstanding a later change of heart (see
 
 People ex rel. Pickle v Pickle,
 
 215 App Div 38, 44;
 
 Matter of
 
 
 *147
 

 Jones,
 
 59 Misc 2d 69,
 
 supra).
 
 The permanent neglect statute was intended to supplement this rule (see NY Legis Ann, 1959, p 415). Moreover, the construction adopted is reasonable because delay beyond the one-year period of neglect may be required to permit careful consideration by the agency staff of the decision to terminate parental rights, or it may be deemed advisable by the agency to allow a further effort at reuniting the family. Whether the delay is justified or not, however, the agency should not be held strictly to a period either one year immediately following commitment to its care or one year immediately preceding the petition to establish neglect. It may not delay institution of proceedings indefinitely, but the delay occurred in this case because of petitioner’s effort to reunite the family after the one-year period and that conduct does not require reversal of the findings of permanent neglect.
 

 That is not to say that the conduct of the parent after the one-year period of neglect should not be considered. At the fact-finding hearing the court is obliged to consider her conduct and commitment toward her child during the interim, if that conduct has substantially changed, as well as the efforts of the agency. An awareness of that judicial obligation, or at least a hope that respondent would improve, apparently motivated petitioner to withdraw the 1981 petition in this case and attempt a trial period of care to give respondent a second chance. That these efforts failed is not to be held against it here when the evidence in the record supports the finding of a continuous period of neglect exceeding one year, unredeemed by sufficient conduct by respondent giving the agency or the court confidence of future success in reuniting the family.
 

 II
 

 Respondent also challenges the direction made by the court at the conclusion of the dispositional hearing.
 

 Unlike a fact-finding hearing which resolves the issue of permanent neglect and in which the best interests of the child play no part in the court’s determination, the court in the dispositional hearing must be concerned only with the best interests of the child. There is no presumption that those interests will be served best by return to the
 
 *148
 
 parent (Family Ct Act, §§ 623, 631). At the time of the dispositional hearing, respondent had married Robert and was expecting another child. Both husband and wife had been employed irregularly and were supporting themselves principally by public assistance. Petitioner produced two witnesses, an experienced caseworker who had worked with Star since birth and with respondent for several years when she was in foster care, and a psychiatrist who offered her professional opinion after examining respondent and the agency’s records. The reports of petitioner and the psychiatrist were also received. Psychological tests and psychiatric evaluation showed respondent suffered from chronic mental illness and was of borderline intelligence. Both petitioner’s witnesses concluded that based upon respondent’s past performance and her mental capacity, she was unable to accept the responsibility to care for Star, particularly with a second child due. Conversely, the evidence established that the preadoptive parents were happily married, both were steadily employed, and were the successful adoptive parents of a seven-year-old boy placed with them by petitioner four years earlier. Star had lived with her preadoptive family for six months at the time of the dispositional hearing, was well adjusted to them and doing well in school. This evidence supports the court’s factual finding that Star’s best interests required permanent termination of respondent’s rights and the transfer of custody and guardianship to petitioner and the Commissioner of Social Services to make her available for adoption.
 

 Finally, we find no merit to respondent’s contention that the court improperly accepted written reports of petitioner’s witnesses in evidence at the dispositional hearing (see
 
 Matter of Leon RR,
 
 48 NY2d 117). The only objection registered was to the psychiatrist’s addendum report delivered to respondent’s counsel a few hours before the psychiatrist testified. The original report had been prepared several weeks earlier and submitted to counsel for his examination then. It indicated that an addendum was forthcoming and the addendum report, when completed, contained no surprising changes in findings or diagnosis from the original. Counsel’s only objection at trial was that
 
 *149
 
 in view of the addendum he wished his own psychiatric evaluation of respondent. The court did not abuse its discretion as a matter of law in denying the application.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Kaye concur.
 

 Order affirmed, with costs.
 

 *
 

 The agency does not rely upon the provisions of section 384-b (subd 7, par [e]) of the Social Services Law which provides that an agency is not required to exercise diligent efforts when the parent has failed for a period of six months to keep the agency apprised of her location.