■ In the Matter of KANDU ANTHONY Y. SOCIETY FOR SEAMEN'S CHILDREN et al., Respondents; PATRICIA YOUNG T., Appellant. (Proceeding No. 1.) In the Matter of KIYARNA GEORGETTE Y. SOCIETY FOR SEAMEN'S CHILDREN et al., Respondents; PATRICIA YOUNG T., Appellant. (Proceeding No. 2.) In the Matter of KAREEM DORIS EARL T. SOCIETY FOR SEAMEN'S CHILDREN et al., Respondents; PATRICIA YOUNG T., Appellant. (Proceeding No. 3.)—In three proceedings pursuant to Social Services Law § 384-b (4) (c) and (d) to permanently terminate the parental rights of the parents of three children, the natural mother appeals, as limited by her brief, from so much of three dispositional orders of the Family Court, Richmond County (Cognetta, J.), all dated July 18, 1988, as granted the respective petitions on the ground of the mother's permanent neglect and committed the three children to the custody and guardianship of the Commissioner of Social Services of the City of New York and the Society for Seamen's Children. The notices of appeal from the decisions dated June 23, 1988, are deemed premature notices of appeal from the dispositional orders (CPLR 5520 [c]).

Ordered that the orders are affirmed insofar as appealed from, without costs or disbursements.

We find that the petitioning agency met its burden of establishing by clear and convincing evidence that despite its "diligent efforts" to strengthen the parental relationship, the mother permanently neglected the children by failing for a period of more than one year to "substantially and continuously" or "repeatedly" plan for their future (Social Services Law § 384-b [7] [a], [f]; [4] [d]; *see also, Matter of Star Leslie W.,* 63 NY2d 136; *Matter of Sheila G.,* 61 NY2d 368).

In October 1984, the subject children were placed in the care of the petitioner Society for Seamen's Children (hereinafter the Agency), which subsequently placed them in a foster home where they have since remained. In January 1987, the petitioning Agency commenced the instant proceedings to terminate the mother's parental rights.

At the inception of the children's placement, the Agency established a plan to permit the mother to regain custody provided that she: (1) complete a parenting skills program, (2) obtain a larger apartment, (3) visit the children regularly, and (4) become involved in psychotherapy. Although the mother completed a parenting skills course and obtained a larger apartment, she was unsuccessful in meeting the two latter goals. The record demonstrates that she attended approximately three therapy sessions at North Richmond Mental Health Center, but that her case was closed in March 1986 as a result of lack of interest or cooperation. Moreover, the mother adamantly maintained at the fact-finding hearing that she was not in need of therapy, despite recommendations by several psychiatrists who all agreed that the children should not be returned to her care unless she made considerable progress in counseling. Additionally, the Agency demonstrated that her visits to the children were extremely irregular, and that although the Agency encouraged biweekly visits, during a one-year period she visited the children on only five occasions. She further failed to attend three conferences which had been arranged by the Agency to discuss the future of the children.

Upon our review of the record, we find that the mother's unwillingness to fully participate in the Agency's plan and her failure to cooperate with its efforts to assist her establishes by clear and convincing evidence a lack of substantial and continuous planning. Accordingly, it is in the best interests of the children that the natural mother's parental rights be terminated in order to permit the children to be adopted

and provided with a stable family life (see, Matter of Sheila G., supra; Matter of Kathleen B., 144 AD2d 357). Bracken, J. P., Sullivan, O'Brien and Ritter, JJ., concur.