OPINION OF THE COURT
Charles F. Graney, J.
The respondent, Kurt L., is the father of the child, Kaila L. (date of birth July 14, 1996), who is the object of this termination of parental rights proceeding based on allegations of permanent neglect pursuant to section 384-b (4) (d) of the Social Services Law. The petition was filed on October 8, 1997. A similar petition has been brought against the child’s mother, Stacy C. The child has been in the custody of the petitioner, Genesee County Department of Social Services, since August 30, 1996 as a result of an emergency removal prior to the filing of neglect petitions against the respondent (docket No. N-65-96) and the mother (docket No. N-64-96). On December 23, 1996, the child Kaila was found to be a neglected child based on the respondent’s admission. A dispositional order continuing the placement was made on January 16, 1997.
The hearing of the instant petition commenced on May 19, 1998. The petitioner rested, after a number of days’ adjournment, on June 26, 1998. The respondent makes the instant motion to dismiss arguing that the petitioner has failed to prove a prima facie case.
In order for this petition to be sustained, the petitioner must produce clear and convincing evidence that the respondent has failed for a period of more than one year since August 30, 1996, substantially and continuously or repeatedly, to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency’s diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child {see, Social Services Law § 384-b [7] [a]). Although alleged, it does not appear that the petitioner is contending that the respondent failed to maintain contact with the child, but rather contends that the respondent has failed to plan for the future of the child. Nor does the petitioner appear to contend that diligent efforts on its part would have been detrimental to the best interests of the child. It contends that the required diligent efforts have been made.
In a proceeding to permanently terminate parental rights— one of the most severe intrusions by the State into an individual’s life — the allegations in the petition and the proof *1047 adduced at the fact-finding hearing should carefully adhere to the statutory requirements (Matter of Anita “PP”, 65 AD2d 18, 21 [3d Dept 1978]). Termination of parental rights may be based only on a specific ground provided for by statute and may not be terminated solely because it is perceived to be in the best interests of the child (Matter of Sheila G., 61 NY2d 368, 386 [1984]). Before considering whether or not the respondent has failed to plan for the future of the child, the court must evaluate, as a threshold matter, whether the petitioner has exercised diligent efforts to encourage and strengthen the parental relationship {supra, at 381). Those efforts must include counseling, making suitable arrangements for visitation, providing assistance to the parents to resolve or ameliorate the problems preventing discharge of the child to their care and advising the parent at appropriate intervals of the child’s progress and development (Matter of Star Leslie W., 63 NY2d 136, 142 [1984]; Social Services Law § 384-b [7] [f]). As part of the process, the petitioner must determine the particular problems facing a parent with respect to the return of his child and make affirmative, repeated and meaningful efforts to assist the parent in overcoming these handicaps (Matter of Sheila G., supra, at 385). The petitioner herein contends that they have met these obligations.
In making diligent efforts the threshold issue, the Court of Appeals relied on legislative history and the report of the Temporary State Commission on Child Welfare. In Matter of Sheila G. (supra, at 380-383), the Court stated:
“This court holds that for both practical and policy reasons, it is the agency’s statutory duty that is demonstrably paramount and pervasive. When an authorized child-care agency has brought a proceeding to terminate parental rights, on the ground of permanent neglect, the court must evaluate as a threshold matter whether the agency has exercised diligent efforts to encourage and strengthen the parental relationship * * *
“The Temporary State Commission on Child Welfare, whose report ‘Barriers to the Freeing of Children for Adoption’ (1976 Report), and draft legislation were adopted by the Legislature when revamping statutes relating to termination of parental rights (see L 1976, ch 666), acknowledged the interrelationship between an agency’s ability and duty to assist the parent in strengthening the parent-child relationship and the parents’ ability to plan for the child’s future. The commission noted that, to enable a child to return to his or her family, an agency *1048 must have ‘the capability to diagnose the problems of the parent and of the child; access to a host of concrete supportive and rehabilitative services; cooperation with community treatment programs (such as health, alcohol, and drug treatment); and a casework staff that can motivate the parents to avail themselves of services’ (1976 Report, at p 100). Lower courts have recognized that an agency is in a superior position to the parent with respect to the planning factor. ‘The parties are by no means dealing on an equal basis. The parent is by definition saddled with problems: economic, physical, sociological, psychiatric, or any combination thereof. The agency, in contrast is vested with expertise, experience, capital, manpower and prestige. Agency efforts correlative to their superiority [are] obligatory' [citations omitted].
“The corollary to the agency’s dominant position is that indifference by the agency may greatly serve to impede a parent’s attempts at reunification * * *
“It is evident, therefore, that the efforts undertaken by an agency on behalf of the parents may have a profound practical effect on what later may be viewed as the success or failure of the parents’ efforts to plan for the future of the child.
“Of course, transcending the practical reasons for providing a threshold requirement that an agency exercise diligent efforts toward reuniting parent and child is the strong public policy that before the State may terminate parents’ rights it must first attempt to strengthen familial ties (see Matter of Leon RR, 48 NY2d 117, 126) * * * the commission recommended ‘retention of the diligent effort requirement reflecting a sound societal value in addition to considerations of fundamental equity, if not constitutional rights, that the State should exercise reasonable efforts to restore familial relationships before seeking to terminate them’ (id., at p 25 [emphasis in original]).
“The Legislature, in enacting section 384-b of the Social Services Law, went further on this issue than did the temporary commission’s original proposed statement of legislative findings and intent. Added to the legislation, when enacted, was the specific statement of intent that ‘the state’s first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home’ (Social Services Law, § 384-b, subd 1, par [a], cl [iii]).”
In this case the child came into the care and custody of the petitioner on August 30, 1996 and the permanent neglect petition was filed against the respondent on October 8, 1997, just *1049 13 months and 1 week later. For the first four months of this period there was a child abuse petition pending against the respondent which he was contesting, placing him in an adversarial role with the petitioner. There were no court-ordered responsibilities placed on respondent until an order of disposition was made on January 16, 1997. Apparently no service plan was prepared for the child Kaila by the petitioner until December 4, 1996. However, the respondent was not part of the preparation of the plan nor was he ever informed of its contents or provided with a copy prior to at least December 22, 1996. On that date respondent attended a service plan review which included his child Kaila. This was a service plan review which considered the updated service plan prepared on December 4, 1996 in connection with Stacy C. and her two older children. Respondent’s name was added to the case name for the first time. This was the first plan in which he or the child Kaila were referred to.
A careful review of the testimony of John Barnes, the caseworker, and a review of the case file indicates that between the date the child came into the petitioner’s custody and December 22, 1996 the caseworker saw the respondent twice in September, twice in October and once in November. Except for Mr. Barnes’ blanket testimony that “every time” he saw the respondent he reviewed with the respondent his obligations, on only one occasion, November 15th, does the evidence show he gave any advice or direction to the respondent. On that date he discussed with the respondent the necessity of cleaning up the house and maintaining better personal hygiene. During the same period the parent aide saw the respondent on three occasions and only once is it indicated she gave the respondent any advice or direction. On October 31st she told the respondent he had to clean up the apartment and should work out his problems with the landlord. Although the service plan dated December 4th recites on page 22 that, “Stacy and Kurt were involved in the development of this plan through case work visits”, that statement, at least in regard to this respondent, is not supported by any evidence.
The caseworker testified that he uses a service plan as a “road map”. However, there was no service plan for the child Kaila. During the period prior to December 22nd no one ever sat down with the respondent and discussed with him in detail what he needed to do to obtain the return of his child nor was any assistance given to him in planning how to accomplish these goals. It is obvious that very little attention was given to *1050 the respondent and his relationship with his child Kaila since the focus was primarily on Ms. C. and her other two children who had been in the care of the petitioner since February 1996. Indeed, the case notes refer to the December 22nd meeting as “Stacy’s service plan review”. Although the December service plan indicates one of the problems was the respondent’s use of marihuana, nothing in the record indicates that this was ever mentioned to him prior to December 22nd. The only other problem identified in the service plan pertaining to the respondent was his failure to obtain and maintain a physically appropriate home. It is noteworthy that the child was removed not because of a deficiency of this respondent but because of actions of the mother.
The instant case is remarkably similar to Matter of Jamie M. (63 NY2d 388 [1984]). Here, as in that case, there was no evidence that the petitioner ever tried to determine the root causes of this respondent’s problems, or make meaningful efforts to assist the respondent in solving them, or do anything other than identifying for him what he had to do to obtain return of the child. No changes were made when this approach proved ineffective. The petitioner’s efforts in this case did not meet the statutory requirement for “consultation and cooperation with the parents in developing a plan” (Social Services Law § 384-b [7] [f] [1]) and “provision of services and other assistance to the parents” (Social Services Law § 384-b [7] [f] [3]). Possibly the problem in this case was that the attention of the agency was focused primarily on the mother.
It is the conclusion of the court that prior to December 22nd the petitioner did not make diligent efforts to encourage and strengthen the parental relationship. Whether or not diligent efforts were made after that time, it is the conclusion of the court that it cannot count the period before December 22, 1996 as part of the one-year period during which the respondent failed to plan for the future of the child. Until at least that date the respondent did not fail to plan “notwithstanding the agency’s diligent efforts”. Therefore, respondent’s motion to dismiss the petition is granted.
While the agency’s diligent efforts may not need to extend for a full year or be coterminous with the 12-month failure-to-plan period, it seems clear to this court that the Legislature intended to hold a parent accountable for a failure to plan only during, or after, a period of time when the agency had made diligent efforts to correct the conditions which required the removal and prevented the return of the child. Any other inter *1051 pretation of the diligent effort requirement would not be consistent with fundamental equity or the intention of the Legislature and would not provide a safeguard to a premature determination that the drastic remedy of permanent termination of the parent-child relationship was appropriate or necessary.
There is a serious question in the court’s mind whether diligent efforts were made in this case even after December 22, 1996. It will be increasingly important for the petitioner to have a clear understanding of what the term diligent efforts means in light of new statutory initiatives to promote quicker terminations of parental rights. It is not this court’s understanding that case management is a substitute for case work, that a referral to services is a substitute for provision of services or, at least, active assistance in obtaining services, or that the identification of symptoms is a substitute for the identification of the root causes of those symptoms and a plan to address those causes. The Court of Appeals has made clear that the petitioner must determine the particular problems facing a parent with respect to the return of a child and make affirmative, repeated and meaningful efforts to assist the parent in overcoming these handicaps. This means, at least as required by the statute, that the petitioner provide assistance to the parents to resolve or ameliorate the problems preventing discharge of the child to their care.