■ In the Matter of Victoria Marie P., a Child Alleged to be Permanently Neglected. Andrew S.P. et al., Appellants; Seamen's Society for Children and Families, Respondent. (And Another Action.) [871 NYS2d 4]—

The determination of permanent neglect was supported by clear and convincing evidence that petitioner agency discharged its duty to undertake "diligent efforts" to strengthen the parental relationship and that, these efforts notwithstanding, respondents failed to plan for the children's future (Social Ser-

vices Law § 384-b [7]; *see Matter of Star Leslie W.*, 63 NY2d 136 [1984]). The agency scheduled weekly visits with the children until visitation was suspended by the court following respondents' disruptive behavior (*see Matter of Emma L.*, 35 AD3d 250, 251 [2006], *lv dismissed in part and denied in part* 8 NY3d 904 [2007]). It referred respondents for substance abuse treatment, a parenting skills program, domestic violence programs, an anger management program for respondent father, and an agency housing specialist, and provided a birth parent advocate who assisted them in understanding their role in achieving the return of the children (*see Matter of Jah'lil Dale Emanuel McC.*, 44 AD3d 547 [2007]). Respondents frequently were late for visits or canceled them altogether and, when they attended, behaved disruptively, which upset the children and resulted in a court-ordered suspension of the visits. Further, they failed to comply with court orders, most notably by delaying or refusing to sign consent forms for the release of records from drug treatment programs, switching drug programs without completing any one program by the time the termination petition was filed, and failing to submit to court-ordered hair-follicle drug tests.

Contrary to respondent mother's contentions, she was not prejudiced by the delay in completion of the proceedings, which was due in large part to respondents' decisions to change counsel, and the court did not err in proceeding with summations after the mother discharged the last in a series of attorneys assigned to represent her (*see Emma L.*, 35 AD3d at 252).

The court properly admitted case records, which had been reviewed by all counsel, upon the consent of the mother's counsel (*see Matter of Jaquone Emiel B.*, 288 AD2d 57, 58 [2001], *lv denied* 97 NY2d 608 [2002]).

A preponderance of the evidence supports the determination that the termination of parental rights, to facilitate the adoptive process, is in Victoria's best interests (*see Star Leslie W.*, 63 NY2d at 147-148). Victoria is thriving in the loving and stable environment provided by the foster family; she has lived with the family for nearly her entire life and has almost no relationship with respondents (*see Matter of Olivia F.*, 34 AD3d 234 [2006]; *Matter of Galeann F.*, 11 AD3d 255 [2004], *lv denied* 4 NY3d 703 [2005]). There is every indication that the foster parents will continue to facilitate visitation among the siblings after Victoria's adoption. Concur—Andrias, J.P., Saxe, Sweeny, Catterson and Moskowitz, JJ.