*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 16, 2014          517283
_____

In the Matter of CARTER A.,
   Alleged to be a Permanently
   Neglected Child.

CORTLAND COUNTY DEPARTMENT OF
   SOCIAL SERVICES,                          MEMORANDUM AND ORDER
               Respondent;

COURTNEY QQ.,
               Appellant.
_____


Calendar Date:  September 11, 2014

Before:  Peters, P.J., Lahtinen, Stein, Garry and Devine, JJ.

_____


     Kelly M. Corbett, Fayetteville, for appellant.

     Kathleen A. Sullivan, Cortland County Department of Social Services, Cortland, for respondent.

     Donna C. Chin, Ithaca, attorney for the child.

_____


Garry, J.

     Appeal from an order of the Family Court of Cortland County (Campbell, J.), entered July 22, 2013, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.

     Respondent was 15 years old when she gave birth to the subject child in August 2011.  The child was removed from her care in October 2011 and, following a brief placement with the

maternal grandmother, was placed in January 2012 with a foster family, with whom he still resides.  In August 2012, the child was adjudicated to be neglected and, in October 2012, petitioner commenced this permanent neglect proceeding.  Following fact-finding and dispositional hearings, Family Court adjudicated the child to be permanently neglected and terminated respondent's parental rights.  Respondent appeals.

We agree with Family Court that petitioner complied with its threshold statutory obligation to exercise diligent efforts to encourage and strengthen the relationship between respondent and the child (see Social Services Law § 384-b [7] [a]; Matter of Star Leslie W., 63 NY2d 136, 142 [1984]).  To satisfy this duty, petitioner must make practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services (see Matter of Thomas JJ., 20 AD3d 708, 709-710 [2005]; Matter of Jessica UU., 174 AD2d 98, 100 [1992]).  Here, petitioner referred respondent to services, including parenting classes, preventive services, substance abuse evaluations and treatment, domestic violence education, family counseling services and mental health evaluations, as well as individual meetings with petitioner's caseworker in which, among other things, respondent was encouraged to terminate her relationship with the child's father, who had a history of violence against respondent and others.  Petitioner kept respondent informed of the child's progress through both reports and individual meetings, facilitated visitation several times each week, and provided the assistance and supervision of a parenting educator.  When respondent was unable to arrange counseling at the facility of her choice due to an outstanding billing issue, petitioner's caseworker referred her to an alternate facility, provided bus passes, and offered to drive respondent to her appointments.

Respondent contends that these services were inadequate because of her youth, and that she should have been placed in foster care with the child, rather than being directed to live in her mother's household, as her mother failed to provide her with

transportation and other support, and the conflict and instability in that household interfered with her progress toward maturity. As Family Court noted, however, respondent was not the subject of this proceeding, and there is no statutory authority by which either petitioner or the court can place a respondent in a permanent neglect proceeding in foster care.[1] Further, even assuming such a placement had been legally feasible, the record reveals that many of the problems that respondent now contends made her mother's household unsuitable resulted directly from respondent's own behavior problems, including ongoing substance abuse, truancy, criminal conduct, and refusal to abide by household rules or terminate her relationship with the child's father despite mutual orders of protection arising from prior domestic violence incidents. As these barriers to reunification were largely of respondent's own making, it does not appear likely that placement in foster care would have ameliorated them, nor – given the persistence and severity of respondent's misconduct – that petitioner or the court would have found that placing respondent in foster care with the child would have served the child's best interests.

Respondent further contends that petitioner should have sought a court order for inpatient substance abuse treatment as recommended by respondent's substance abuse counselor. The counselor testified that she informed petitioner that she believed respondent needed such treatment; however, she also testified that she did not ask petitioner to obtain a court order because respondent had flatly refused to consider inpatient treatment. Respondent confirmed this refusal in her testimony. Petitioner fulfilled its duty by repeatedly seeking to involve

---

[1] In 2012, respondent was the subject of separate proceedings commenced by her school in which Family Court adjudicated her to be a person in need of supervision (hereinafter PINS). Although these proceedings could have resulted in foster care placement, this did not occur; in accord with the recommendation of the Probation Department, respondent was instead ultimately placed on probation. Notably, petitioner was not a party to the PINS proceeding, and thus did not exert any manner of control over respondent's placement.

respondent in substance abuse evaluation and treatment, and was not required to guarantee respondent's success or to use compulsion to overcome her resistance (see Matter of Sheila G., 61 NY2d 368, 385 [1984]; Matter of James WW. [Tara XX.], 100 AD3d 1276, 1277-1278 [2012], lv denied 20 NY3d 1057 [2013]).

Next, petitioner proved by clear and convincing evidence that, although able to do so, respondent failed for the requisite time period to plan for the future of the child (see Social Services Law § 384-b [7] [a]).  During the 12 months before the petition was filed, respondent made few efforts to avail herself of the offered services and completed almost none of them.  She enrolled in one of two required parenting classes, but failed to complete it.  She maintained contact with the child's father despite orders of protection, which were violated at least twice.  She failed to reside with her mother and stepfather as directed or to maintain stable housing elsewhere, moving in and out of various households including those of the child's father and his relatives.  She stopped attending school in February 2012 and later agreed to enroll in summer school, but attended so infrequently that she was told not to return.  Shortly after school reopened in September, she was suspended after being found in possession of another student's prescription medication.  This incident also violated her probation and led to criminal charges that were pending at the time of the fact-finding hearing.  Separate criminal charges were also pending against her after a shoplifting incident.  She was discharged unsuccessfully from outpatient substance abuse treatment after repeatedly testing positive for marihuana; nevertheless, she testified at the fact-finding hearing that she continued to believe that she was not so addicted as to require inpatient treatment.  Despite petitioner's assistance with referrals and transportation, respondent delayed in engaging in mental health services, and was not evaluated by a prescribing psychiatrist until shortly before the permanent neglect proceeding was commenced.  The only service with which respondent consistently and willingly engaged was visitation with the child.  However, she failed to consistently comply with requirements such as bringing along a stocked diaper bag except when prompted by her mother, and she never progressed beyond supervised visitation.  Clear and convincing record evidence supports Family Court's finding that respondent failed to make

meaningful changes to address the issues that led to the child's removal and, thus, failed to plan for his future (see Matter of Jah'Meir G. [Eshale G.], 112 AD3d 1014, 1015-1016 [2013], lv denied 22 NY3d 863 [2014]; Matter of Arianna BB. [Tracy DD.], 110 AD3d 1194, 1196-1197 [2013], lv denied 22 NY3d 858 [2014]; Matter of Jayde M., 36 AD3d 1168, 1169-1170 [2007], lv denied 8 NY3d 809 [2007]).

Finally, Family Court did not abuse its discretion in denying respondent's request for a suspended judgment (see Family Ct Act §§ 631 [b]; 633). The court may grant this temporary remedy following an adjudication of permanent neglect if it finds that it would be in the child's best interests to give the parent a brief grace period in which to demonstrate his or her fitness to care for the child and improve parenting skills (see Matter of Shania D. [Peggy E.], 82 AD3d 1513, 1513-1514 [2011]; Matter of Clifton ZZ. [Latrice ZZ], 75 AD3d 683, 683-684 [2010]). The sole concern at disposition is the child's best interests, and there is no presumption that any disposition, including reunification with the parent, will promote such interests (see Matter of Nevaeh SS. [Valerie L.], 68 AD3d 1188, 1189 [2009]; Matter of Joshua BB., 27 AD3d 867, 869 [2006]). In the final months of the dispositional phase, respondent did take some commendable steps toward maturity following an incident that occurred in January 2013 that involved her psychiatric hospitalization. She had been found to be in possession of drug paraphernalia at school, and she admitted that she had been using and selling synthetic marihuana to avoid detection in drug tests. In the aftermath of this incident, which respondent described as frightening, she completed a drug evaluation, engaged in several sessions of outpatient drug treatment and, during the two months preceding the conclusion of the dispositional hearing, consistently tested negative for conventional drugs and synthetic marihuana. She completed teen parenting, nutrition and domestic violence programs, finished a GED program with good grades, and was preparing to take the GED exam. She also acquired and kept a job and continued regular visits with the child. However, Family Court noted the last-minute nature of these laudable accomplishments, and further observed that respondent's inability to maintain stable relationships and housing had not improved. Shortly before the dispositional hearing began, respondent

married a 20-year-old man after a brief relationship, and moved with him into his parents' house. The marriage failed within a few months, amidst allegations that respondent had been unfaithful to her new husband and had otherwise behaved badly toward him. The husband's parents asked respondent to leave their home, and at the close of the dispositional hearing, she was again living with her mother.

If respondent's request for a suspended judgment had been granted, her plan was for the child to remain in foster care for another year to give her additional time to mature and become capable of caring for him. At the time of disposition, the child was approximately two years old and was closely bonded with the foster parents, with whom he had resided for all but the first few months of his life. Given their desire to adopt him, and the belated and incomplete nature of respondent's improvement following her long and troubled history, we find no error in Family Court's determination that freeing the child for adoption was in his best interests (see Matter of Madalynn I. [Katelynn J.], 111 AD3d 1205, 1207 [2013]; Matter of Angelina BB. [Miguel BB.], 90 AD3d 1196, 1198 [2011]).

Peters, P.J., Lahtinen, Stein and Devine, JJ., concur.

ORDERED that the order is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court