■ In the Matter of LEGEND S., a Child Alleged to be Permanently Neglected, Appellant. EDWIN GOULD SERVICES FOR CHILDREN, Appellant; TAWANA T. et al., Respondents. [66 NYS3d 2]—

Order, Family Court, New York County (Jane Pearl, J.), entered on or about March 29, 2016, which, after a fact-finding hearing, dismissed the petition filed by Edwin Gould Services for Children (EGS), to declare a child permanently neglected, unanimously affirmed, without costs.

Respondents Tawana T. and Terrell S. are the parents of the subject child, L., born November 30, 2008. The child was born prematurely, and, upon discharge from the hospital was placed directly into foster care, on March 6, 2009, as a result of findings and orders determining he is a neglected child. On that date, the Commissioner of Social Services transferred responsibilities for the child's foster care placement to EGS. The child has lived with the same foster mother since March 6, 2009, and she seeks to adopt him.

On March 20, 2015, EGS filed a petition for commitment of the child, alleging that the child was a permanently neglected child as defined in Social Services Law § 384-b, and seeking termination of parental rights. We affirm Family Court's dismissal of the petition on grounds of EGS's failure to prove, by clear and convincing evidence, that the parents, for a period of at least one year following the date the child came into EGS's care, substantially and continuously or repeatedly failed to plan for the child's future (see Social Services Law § 384-b [7] [a]; Matter of Star Leslie W., 63 NY2d 136 [1984]).

The obligation to plan requires parents "to take such steps as may be necessary to provide an adequate, stable home and parental care for the child within a period of time which is reasonable under the financial circumstances available to the parent. The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative. In determining whether a parent has planned for the future of the child, the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (Social Services Law § 384-b [7] [c]).

EGS and the attorney for the child (AFC) do not specify the one-year period during which the parents allegedly failed to plan for the child's future. They contend that the parents did not complete certain mandated services. Specifically, case-

worker Calliste testified that after their four other children were removed from their home due to a domestic violence incident, both parents failed to participate in random drug testing, and the father did not complete counseling. However, the period of alleged noncompliance was shorter than the statutory one-year period (*see* Social Services Law § 384-b [7] [a]).

With respect to the period during which the parents undisputedly did comply with the service plan, EGS and AFC argue that, notwithstanding such cooperation, they failed to gain insights into their own behavior that led to the child's removal at the outset, as well as their mental health issues. EGS did not meet its burden to prove this as a basis for a finding of permanent neglect. The evidence at trial included testimony that the mother completed all mandated services, and sought out additional services on her own initiative. As to the father, the very limited testimony relied on by EGS to prove his failure to gain insights ("I just wanted to comply"), is insufficient to meet EGS's high burden. Moreover, because it is not possible, on the record before us, to determine why the child was removed from the parents' care in 2009, it cannot be said that EGS has proven, by clear and convincing evidence, that the parents failed to gain insights into the behavior that led to that removal. Likewise, in the absence of a more complete explanation in the record of the parents' mental health issues, it is not possible to conclude that they lack insight into their own mental health.

Nor has EGS met its burden to prove the parents failed to plan for the child's future by failing to secure adequate housing. EGS and AFC do not adequately address the evidence that certain housing-related issues were beyond the family's control, such as strict shelter rules regarding maximum occupancy. The parents' application to obtain NYCHA housing was denied because of some unspecified reason related to the father. Although the lack of housing is a concern that the parents must address, given the dearth of information about why the NYCHA application was denied, and what other housing subsidies might be available to the parents, we cannot conclude, on this sparse record, that the failure to secure adequate housing, without more, constitutes a sufficient basis for a finding of permanent neglect.

"[T]ermination of parental rights is a drastic event" (*Matter of Medina Amor S.*, 50 AD3d 8, 16 [1st Dept 2008], *lv denied* 10 NY3d 709 [2008]). Although we recognize that the child has never lived with his parents and has spent his entire life in foster care, we cannot reverse for that reason alone. In this

case, the court properly dismissed the petition because EGS failed to satisfy its burden of proof.

We have considered EGS's and AFC's remaining arguments and find them unavailing. Concur—Richter, J.P., Mazzarelli, Kahn and Moulton, JJ.