Matter of William S. L. (Julio A. L.) (2021 NY Slip Op 03838)





Matter of William S. L. (Julio A. L.)


2021 NY Slip Op 03838


Decided on June 16, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 16, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON
PAUL WOOTEN, JJ.


2019-13027
2019-13033
2021-04043
 (Docket No. B-2976-13) (Docket No. B-24513-10) (Docket Nos. B-24511-10, B-24512-10, B-24513-10, B-2976-13)

[*1]In the Matter of William S. L. (Anonymous). Children's Aid Society, petitioner-respondent;
and
Julio A. L. (Anonymous), appellant, et al., respondent. (Proceeding No. 1)
In the Matter of Alexander S. L. (Anonymous). Children's Aid Society, petitioner; Julio A. L. (Anonymous), et al., respondents. (Proceeding No. 2)
In the Matter of Hailey E. L. (Anonymous). Children's Aid Society, petitioner-respondent; Julio A. L. (Anonymous), appellant, et al., respondent. (Proceeding No. 3)
In the Matter of Amanda P. L. (Anonymous). Children's Aid Society, petitioner-respondent; Julio A. L. (Anonymous), appellant, et al., respondent. (Proceeding No. 4) (Appeal No. 1)
In the Matter of Hailey E. L. (Anonymous). Children's Aid Society, petitioner-respondent; Julio A. L. (Anonymous), appellant, et al., respondent. (Appeal No. 2)
In the Matter of Amanda P. L. (Anonymous). Children's Aid Society, petitioner-respondent; Julio A. L. (Anonymous), appellant, et al., respondent. [*2](Appeal No. 3)


Tammi D. Pere, Jamaica, NY, for appellant.
Rosin Steinhagen Mendel, PLLC, New York, NY (Douglas H. Reiniger of counsel), for petitioner-respondent.
Jennifer A. Marshall, Brooklyn, NY, attorney for the child William S. L. (no brief filed).
Helene Chowes, New York, NY, attorney for the child Hailey E. L.
Steven P. Forbes, Huntington, NY, attorney for the child Amanda P. L.



DECISION & ORDER
In related proceedings pursuant to Social Services Law § 384-b, the father appeals from (1) an order of the Family Court, Kings County (Ann E. O'Shea, J.), dated June 10, 2018, (2) an order of fact-finding and disposition of the same court dated November 26, 2019, and (3) an order of fact-finding and disposition of the same court also dated November 26, 2019. The order dated June 10, 2018, insofar as appealed from, after a fact-finding hearing, found that the father permanently neglected the subject children William S. L., Hailey E. L., and Amanda P. L. and that the father is presently and for the foreseeable future unable, by reason of mental illness, to provide proper and adequate care for those children. The first order of fact-finding and disposition dated November 26, 2019, insofar as appealed from, after a dispositional hearing, terminated the father's parental rights to the child Hailey E. L. and transferred guardianship and custody of that child to the Commissioner of Social Services of the City of New York and the petitioner for the purpose of adoption. The second order of fact-finding and disposition dated November 26, 2019, insofar as appealed from, after a dispositional hearing, terminated the father's parental rights to the child Amanda P. L. and transferred guardianship and custody of that child to the Commissioner of Social Services of the City of New York and the petitioner for the purpose of adoption.
ORDERED that the appeal from so much of the order dated June 10, 2018, as relates to the children Hailey E. L. and Amanda P. L. is dismissed, without costs or disbursements; and it is further,
ORDERED that on the Court's own motion, the notice of appeal from so much of the order dated June 10, 2018, as relates to William S. L. is deemed to be an application for leave to appeal, and leave to appeal is granted (see Family Ct Act § 1112[a]); and it is further,
ORDERED that the order dated June 10, 2018, is affirmed insofar as reviewed, without costs or disbursements; and it is further,
ORDERED that on the Court's own motion, the notice of appeal from an order dated October 31, 2019, is deemed to be a premature notice of appeal from the orders of fact-finding and disposition dated November 26, 2019 (see CPLR 5520[c]); and it is further,
ORDERED that the orders of fact-finding and disposition dated November 26, 2019, are affirmed insofar as appealed from, without costs or disbursements.
The appeal from so much of the order dated June 10, 2018, as relates to the subject children Hailey E. L. and Amanda P. L. must be dismissed, as no appeal lies as of right from a nondispositional order of the Family Court (see Family Ct Act § 1112[a]) and leave to appeal has not been granted. However, so much of the order dated June 10, 2018, as relates to Hailey E. L. and Amanda P. L. is brought up for review on the appeal from the orders of fact-finding and disposition dated November 26, 2019 (see CPLR 5501[a][1]).
The subject child William S. L. was born in January 2004, and the subject child Hailey E. L. was born in September 2005. In May 2009, William and Hailey, along with an older [*3]sibling, were removed from the care of the mother and father and were placed with the paternal grandmother (hereinafter the grandmother). In September 2010, the Children's Aid Society (hereinafter the agency) filed petitions, inter alia, to terminate the father's parental rights to William and Hailey.
The subject child Amanda P. L. was born in July 2011, and was placed with the grandmother in January 2012. In September 2012, the agency learned that the grandmother had been permitting the father to have unsupervised contact with William, Hailey, and Amanda (hereinafter collectively the children) in violation of orders of protection in favor of the children. In November 2012, the children were removed from the grandmother's custody and placed with the foster mother. In March 2013, the agency filed a petition to terminate the father's parental rights to Amanda. In April 2019, William was transferred to a different foster placement.
In an order dated June 10, 2018, the Family Court, after a fact-finding hearing, concluded that, pursuant to Social Services Law § 384-b(4)(c), the father was presently and for the foreseeable future unable, by reason of mental illness, to provide proper and adequate care for the children. Separately, the Family Court also concluded that the father had permanently neglected the children within the meaning of Social Services Law § 384-b(7)(a) (see Social Services Law § 384-b[4][d]). At a dispositional hearing, the agency presented evidence that Hailey, then 14 years old, and Amanda, then eight years old, wished to be adopted by the foster mother, and that the foster mother wished to adopt them. In two orders of fact-finding and disposition, both dated November 26, 2019, the court, after the dispositional hearing, among other things, in effect, terminated the father's parental rights to Hailey and Amanda and transferred guardianship and custody of those children to the Commissioner of Social Services of the City of New York and the agency for the purpose of adoption by the foster mother. The father appeals.
In a proceeding to terminate parental rights pursuant to Social Services Law § 384-b(4)(c), the agency must prove by clear and convincing evidence that the parent is "presently and for the foreseeable future unable, by reason of mental illness . . . to provide proper and adequate care for a child who has been in the care of an authorized agency for the period of one year immediately prior to the date on which the petition is filed" (see Matter of Zahyre A. [Faye A.], 183 AD3d 724, 724-725; Matter of Alicia K. [Cain K.], 167 AD3d 891, 893; Matter of Alexander James R., 48 AD3d 820, 821). For the purpose of Social Services Law § 384-b, "'mental illness' means an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child as defined in the family court act" (id. § 384-b[6][a]). Where the petition is premised on the parent's inability to care for the children by reason of mental illness, the mere possibility that the parent's condition may improve does not preclude termination of parental rights (see Matter of Alexander James R., 48 AD3d at 821; Matter of Harris A.A., 285 AD2d 755, 757).
In a proceeding to terminate parental rights on the ground of permanent neglect, the threshold is whether the agency engaged in diligent efforts to encourage and strengthen the parent-child relationship (see Social Services Law § 384-b[7][a]; Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 429; Matter of Elizabeth M.G.C. [Maria L.G.C.], 190 AD3d 730, 731). However, in providing appropriate services to a parent, an agency need not "guarantee that the parent succeed in overcoming his or her predicaments" (Matter of Sheila G., 61 NY2d 368, 385; see Matter of Jamie M., 63 NY2d 388, 393). Instead, "[p]arents must themselves assume a measure of initiative and responsibility; they have a duty to plan for the future of their child" (Matter of Jamie M., 63 NY2d at 393; see Matter of Star Leslie W., 63 NY2d 136, 143; Matter of Elasia A.D.B. [Crystal D.G.], 118 AD3d 778, 779). Accordingly, a parent will not be deemed to have fulfilled the service plan where the parent has failed to gain insight into the problems that caused the removal of the children and prevented their return to the parent (see Matter of Zahimire E.G. [Lyasia R.B.], 171 AD3d 1056, 1057; Matter of Gregory A.J. [Gregory J.], 170 AD3d 1017, 1018).
Here, the agency demonstrated that although it repeatedly referred the father for services, he was resistant to services which would have helped him overcome the conditions which led to the children's removal, and that, when the father did participate in services, he failed to change [*4]his behavior, instead minimizing it or blaming it on others (see Matter of Ethan A.R. [Noelle M.R.], 156 AD3d 791, 792; Matter of Selena L. [Susan B.L.]. 140 AD3d 769, 770; Matter of Darren V., 61 AD3d 986, 987; Matter of Amy B., 37 AD3d 600, 601). The agency presented evidence that, throughout the pendency of these proceedings, the father employed profanity, insults, and racial slurs when talking to and about agency staff, often in the presence of the children and despite their obvious distress at his behavior.
The court's psychological evaluator offered diagnoses of intermittent explosive disorder and suspected antisocial personality disorder, though he was unable to confirm that diagnosis due, inter alia, to a lack of historical data. The evaluator also gave diagnoses of spouse or partner violence (physical, suspected), parent-child relational problem, and discord with social service provider. Both the father's therapist and the agency's psychological evaluator offered only guarded prognoses for his improvement, and the psychological evaluator believed that the children would be in danger of further neglect if returned to the father's care (see Matter of Ashley L., 22 AD3d 915, 916; see also Matter of Smith v Rygiel, 156 AD3d 891, 892). The father's psychological evaluator disagreed with the diagnoses offered by the court's evaluator, instead agreeing with the therapist's diagnoses of adjustment disorder and depression, but conceded that the father was unprepared to take custody of the children. Notably, by the conclusion of the fact-finding hearing, William and Hailey had been in foster care for approximately nine years and Amanda for virtually her entire life. Accordingly, we find that there was clear and convincing evidence to support the Family Court's conclusions that the father permanently neglected the children within the meaning of Social Services Law §§ 384-b(4)(d) and 384-b(7)(a) and that pursuant to Social Services Law § 384-b(4)(c), the father was presently and for the foreseeable future unable, by reason of mental illness, to provide proper and adequate care for the children.
"At the dispositional stage of a proceeding to terminate parental rights, the court focuses solely on the best interests of the child" (Matter of Aliah M.J.-N. [Candice J.-Anna J.], 182 AD3d 557, 559; see Family Ct Act § 631; Matter of Star Leslie W., 63 NY2d at 147-148; Matter of Victoria M. [Jonathan M.], 187 AD3d 1188). "The factors to be considered in making the determination include the parent or caretaker's capacity to properly supervise the child, based on current information and the potential threat of future abuse and neglect" (Matter of Jaheem M. [Cymon M.], 174 AD3d 610, 611 [internal quotation marks omitted]; see Matter of Eliora B. [Kennedy B.], 146 AD3d 772, 774; Matter of Victoria P. [Victor P.], 121 AD3d 1006). At disposition, "[t]here is no presumption that those interests will be served best by a return to the biological parent" (Matter of Aliah M.J.-N. [Candice J.-Anna J.], 182 AD3d at 559; see Matter of Star Leslie W., 63 NY2d at 147-148; Matter of Isabella R.W. [Jessica W.], 161 AD3d 990, 991).
The evidence at both the fact-finding and dispositional hearings, which included in camera interviews with the children, demonstrated that Hailey and Amanda were closely bonded to the foster mother, with whom Hailey had lived for eight years, and Amanda since she was an infant. The agency presented evidence that both Hailey and Amanda wanted to be adopted by the foster mother, and the foster mother had expressed willingness to honor the children's desire to maintain a relationship with the father.
At the dispositional hearing, the agency presented evidence that, even after the finding of permanent neglect, the father continued to employ vulgar language and ethnic and racial slurs in interactions with agency staff, including in the children's presence. Although the father offered direct testimony at the dispositional hearing, his testimony was stricken because he failed to appear for cross-examination.
Here, the father failed to demonstrate that he was prepared for the children's return. A suspended judgment was not warranted in light of the father's failure to make progress toward the goal of reunification in the decade since the removal of William and Hailey (see Matter of Victoria M. [Jonathan M.], 187 AD3d at 1190; Matter of Kadi W. v ACS-Kings, 167 AD3d 757, 758; Matter of Jasiah T.-V.S.J. [Joshua W.-Shatesse J.], 166 AD3d 876, 878; Matter of Dupree J.P. [Richard P.], 128 AD3d 967, 968). In contrast, the evidence demonstrated that Hailey and Amanda were thriving in the care of the foster mother, with whom they have lived most of their lives. Accordingly, the Family Court properly determined that it was in the best interests of Hailey and Amanda to free [*5]them for adoption by the foster mother (see Matter of Xiomara D. [Faith D.], 141 AD3d 585).
CHAMBERS, J.P., MILLER, BRATHWAITE NELSON and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court