■ In the Matter of SHIANN RR., a Child Alleged to be Permanently Neglected. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; BARBARA QQ., Appellant. [726 NYS2d 816] —Rose, J. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered March 1, 2000, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Shiann RR. a permanently neglected child, and terminated respondent's parental rights.

Respondent is the mother of Shiann RR. (born in 1995).* Following Shiann's removal from respondent's care in September 1997, Family Court found her to be neglected in June 1998 based on allegations of respondent's acts of domestic violence against her then boyfriend. In February 1999, petitioner commenced this proceeding pursuant to Social Services Law § 384-b seeking an adjudication of permanent neglect. The petition alleged, *inter alia*, that petitioner had made diligent efforts to encourage and strengthen the parental relationship by cooperating with respondent to develop an appropriate plan for services designed to resolve the problems preventing return of the child. The petition further alleged that respondent failed to properly and adequately supervise the child during visitation, had episodes of verbal and physical aggression and suffered from both a mental illness and mental retardation. Petitioner voluntarily withdrew the allegation of mental retardation and, at the conclusion of the fact-finding hearing, Family Court found the child to be permanently neglected based upon respondent's failure to adequately plan for the return of the child. Family Court expressly noted, however, that respondent had maintained contact with the child, and denied the petition to the extent that it was based upon respondent's alleged mental illness. Following a dispositional hearing, Family Court terminated respondent's parental rights. Respondent appeals.

It is well settled that the threshold inquiry in any such proceeding is whether the agency has met its burden of demonstrating that it made "diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child" (Social Ser-

---

* Respondent has one other child born in April 1999.

vices Law § 384-b [7] [a]; *see, Matter of Star Leslie W.*, 63 NY2d 136, 142; *Matter of Princess C.*, 279 AD2d 825; *Matter of Richard W.*, 265 AD2d 685). In evaluating an agency's efforts, we turn first to the statutory guidelines found in Social Services Law § 384-b (7) (f) (*see, Matter of Sheila G.*, 61 NY2d 368, 385). "An agency must always determine the particular problems facing a parent with respect to the return of his or her child and make affirmative, repeated, and meaningful efforts to assist the parent in overcoming these handicaps" (*id.*, at 385). "Thus, when an agency has assisted a parent through meaningful efforts to provide counseling with respect to a problem (psychological, physiological, financial, and the like) that impedes the return of the child * * * and to schedule regular and meaningful visits with the child, it will be found that the agency has satisfied its statutory duty" (*id.*, at 384 [citations omitted]; *see, Matter of Star Leslie W.*, *supra*, at 142; *Matter of Matthew YY.*, 274 AD2d 685, 686). Of course, if an agency "has embarked on a diligent course but faces an utterly un-co-operative or indifferent parent [it] nevertheless [is] deemed to have fulfilled its duty" (*Matter of Sheila G.*, *supra*, at 385).

Here, petitioner has not met its burden of proof with respect to these threshold issues. We note first that petitioner does not dispute that the acts of domestic violence which caused the child's removal from respondent's home ceased shortly thereafter with the departure of her boyfriend and have not recurred. As to events occurring after removal—the critical time period here—petitioner's evidence at the fact-finding hearing focused instead on caseworker accounts of respondent's occasional angry outbursts directed at service providers and her comment allegedly threatening a public health nurse. There was no evidence, however, that respondent's allegedly violent acts were ever directed at the child either before or after the child's removal from her custody. In this regard, Paula Dew, the senior caseworker, testified that respondent had never exhibited an improper emotional response to the child during visitation. Despite petitioner's apparent recognition that anger was a primary handicap of respondent, petitioner's proof failed to establish any plan or service specifically designed to address this problem. Its sole assistance to her in this regard was to advise her that she had to curb her outbursts. While the record reflects that respondent did incidently discuss anger issues with her counselor and that this counseling resulted from a referral apparently initiated by petitioner, our review of the record reveals no evidence that petitioner was aware that respondent was receiving any counseling at all for her anger problems during

the critical time period. Nor, as Dew testified, were any additional referrals made.

Petitioner also contended that respondent's poor parenting skills were a primary impediment to the child's return. The record, however, demonstrates that respondent actively sought to be reunited with her child, maintained contact through the limited visitation permitted by petitioner, and completed the sole parenting class assigned by petitioner after the child's removal. Although respondent did not attend enough sessions to satisfactorily complete two parenting classes conducted prior to the child's removal, she did complete the one series of such classes conducted after the child's removal. Despite the testimony of petitioner's caseworkers that respondent failed to exhibit adequate parenting skills during supervised visitation, petitioner did not provide, or require respondent's attendance at, additional parenting training.

Turning next to the related issues of cooperation between the parties and petitioner's obligation to schedule meaningful visits, Dew conceded that there was animosity between respondent and the caseworkers supervising the visitation. Although respondent had requested a change in who supervised the visitation, Dew never considered such a change. At an earlier hearing, Dew recounted in great detail all the negative aspects of the visitation that she supervised, such as the presence of minor safety hazards in the home, but was unable to recall any positive or encouraging statements she may have made to respondent. Petitioner limited respondent to supervised visitation and, for the first 11 months of the child's stay in foster care, the visitation was for less than two hours per week. Despite respondent's requests, unsupervised visitation was not permitted until March 1999, and then only as a result of Family Court's intervention. Caseworker testimony indicated that petitioner then terminated the unsupervised visitation because of the child's subsequent unruly behavior in the foster home, yet there is no evidence in the record that petitioner made any effort to first ascertain whether the child's behavior was due to respondent's conduct during visitation or other events such as the birth of respondent's second child and the departure of three foster siblings from Shiann's foster home. When the visitation supervisor was eventually changed in June 1999, during the pendency of the permanent neglect petition, the reports of visitation were very positive.

Thus, in our view, the record establishes that, with only a few exceptions, respondent visited with her child whenever permitted to do so and participated in services provided or

recommended by petitioner. This participation by respondent, coupled with petitioner's failure to refer her to additional parenting training and anger management counseling, does not reflect an utterly uncooperative or indifferent parent, but a mother whose recognized handicaps were inadequately addressed by petitioner. Under these circumstances, we find that petitioner failed to make affirmative, repeated and meaningful efforts to cooperate with and assist this parent in overcoming her limitations and to formulate a comprehensive plan to reunite her with her child. Nor has petitioner established any of the exceptions to the diligent efforts requirement allowed for in Social Services Law § 384-b (7) (a) or (e). Given our determination that petitioner has not met its burden with respect to these threshold issues (*see, Matter of Jawan Y.*, 278 AD2d 540, 541), we do not address the further inquiry of whether respondent failed for more than one year to plan for her child's future.

Cardona, P. J., Mercure, Crew III and Mugglin, JJ., concur. Ordered that the order is reversed, on the law, without costs, and petition dismissed.

