■ In the Matter of KEITH JJ., and Others, Children Alleged to be Abused and/or Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; WILLIAM KK., Appellant. (Proceeding No. 1.) In the Matter of SAVANNAH KK., a Child Alleged to be Permanently Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CLARA GG. et al., Appellants. (Proceeding No. 2.) (And Three Other Related Proceedings.) [743 NYS2d 202] —Peters, J. Appeals (1) from an order of the Family Court of Otsego County (Burns, J.), entered January 4, 2001, which, inter alia, granted petitioner's applica-

tion, in a proceeding pursuant to Family Court Act article 10, to adjudicate Dakota LL. to be an abused child and Savannah KK. to be a neglected child, and (2) from an order of said court (Going, J.), entered February 20, 2001, which, inter alia, granted petitioner's applications, in four proceedings pursuant to Social Services Law § 384-b, to adjudicate Keith JJ., Kyle JJ., Dakota LL. and Savannah KK. permanently neglected children, and terminated respondents' parental rights.

Respondent Clara GG. is the mother of Keith JJ. (born in 1987), Kyle JJ. (born in 1990), Dakota LL. (born in 1995) and Savannah KK. (born in 1999). Respondent William KK. is the biological father of Savannah. By order entered August 10, 1999, Family Court (Scarzafava, J.) adjudged Keith, Kyle and Dakota to be neglected by Clara (see, Family Ct Act § 1012). Aware that Kyle had touched Dakota in a sexual manner, Clara admitted that she had, inter alia, left Kyle and Dakota alone together unsupervised after being told not to do so by both her caseworker and her mother. Shortly after Savannah's birth, another neglect petition was filed against Clara resulting in the placement of Savannah in petitioner's custody. In October 1999, petitioner filed an abuse petition against William, alleging that he had, inter alia, sexually abused Dakota and neglected all four children. Shortly thereafter, Family Court (Scarzafava, J.) adjudged Kyle to be an abused child based upon a finding that he had been sexually abused by his father.

After a fact-finding hearing on the neglect petition against Clara concerning Savannah and the abuse petition against William concerning Dakota, Family Court (Scarzafava, J.) determined, inter alia, that William sexually abused Dakota by digitally penetrating her. Based thereon, along with his refusal to accept responsibility for his behavior, a derivative finding of neglect was entered with respect to Savannah. With the quantum of sexual abuse incidents occurring in this home, the court also concluded that Clara had failed to take appropriate measures to protect her children, thus warranting a derivative finding of neglect as to Savannah. At the conclusion of the dispositional hearing, Family Court (Scarzafava, J.), by decision dated July 10, 2000, determined that not only must all four children be placed outside respondents' home, but also that several conditions must be imposed upon both respondents which included their participation in, and completion of, a specialized treatment program for either sex offenders or nonoffending partners, as their findings indicate, as well as parenting classes and counseling. Such decision further required that they be fully cooperative with additional preventive services of-

fered by petitioner and that all visits by Clara with all of her children be supervised, with a preclusion of contact by William with both Kyle and Dakota; his visits with Savannah were to be supervised. This decision was reduced by Family Court (Burns, J.) to an order entered January 4, 2001.

As against both respondents, a permanent neglect petition pertaining to Savannah and separate permanent neglect petitions concerning the other three children against Clara were filed. After a fact-finding hearing on all these petitions, Family Court (Going, J.) determined that both respondents permanently neglected the children. By order entered February 20, 2001, it terminated William's parental rights with respect to Savannah and Clara's parental rights with respect to all four children.

William appeals from the January 2001 order finding him to have abused Dakota and neglected Savannah and from the February 2001 order resulting in the termination of his parental rights. Clara appeals from the finding of permanent neglect and the termination of her parental rights as to all of the children.

First addressing whether Family Court abused its discretion when it denied William's request for a second psychological evaluation of Dakota, we can find no error since it properly "consider[ed] the need of the respondent * * * for such examination to assist in the preparation of the case and the potential harm to the child from the examination" (Family Ct Act § 1038 [c]). At the time of the request, Dakota, merely four years old, had already been subjected to extensive questioning concerning not only the sexual abuse by William, but also an incident involving her half-brother. She had further endured the invasive physical examination necessary to investigate these allegations concerning William. With testimony available from numerous other sources concerning the abuse, Family Court properly balanced the possible benefit to William against the potential harm to Dakota (*see, Matter of Jessica R.*, 78 NY2d 1031, 1033; *Matter of Star Leslie W.*, 63 NY2d 136, 148; *Matter of Crystal AA.*, 271 AD2d 771, 772, *lv dismissed* 95 NY2d 903; *Matter of Danielle YY.*, 188 AD2d 894, 896, *lv denied* 81 NY2d 706).

We further find that petitioner sustained its burden of establishing, by a preponderance of the evidence, that William abused Dakota and neglected Savannah (*see*, Family Ct Act § 1046 [b] [i]). The testimony and report of Richard Hamil, Director of Forensic Mental Health Associates, coupled with the testimony of both David Haswell, Dakota's long-term fam-

ily physician, and Dorothy Jicha, Dakota's foster mother, provided ample evidence to support the determination rendered (*see, Matter of Joshua QQ.*, 290 AD2d 842, 844). Most tellingly, Haswell's physical examination of Dakota identified bilateral labial tears, a torn hymen, some localized bleeding and irritation behind her vagina. Bruises were also noted on her face which Dakota attributed to William. Haswell found these bruises to be consistent with an adult's fingers pressed into her cheek to hold her while she was being digitally penetrated. Based upon the testimonial and documentary evidence presented, we find petitioner to have sustained its evidentiary burden as to the sexual abuse of Dakota and, pursuant to Family Court Act § 1046 (a) (i), the derivative finding of neglect as to Savannah.

We now turn to the finding of permanent neglect which resulted in the termination of William's parental rights to Savannah (*see,* Social Services Law § 384-b [4] [d]). To support such finding, proof must establish that William "failed to maintain contact with or plan for the future of [his] child for a period of one year after the child came into the custody of an authorized agency notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (*Matter of Star Leslie W., supra* at 140). Upon our review of the record, we find the testimony of caseworker Lisa Hathaway to be critical. Hathaway testified that William attended only 4 of 12 parenting sessions to which he had been referred, repeatedly failed to find employment, choosing to rely solely on Social Security benefits, and failed to attend sex offender counseling. Despite his exercise of supervised visitation with Savannah who has been in petitioner's care since her birth and his acceptance of the services of a parent aide, we find Family Court's finding of permanent neglect and the termination of his parental rights to be proper (*see, Matter of Sheila G.*, 61 NY2d 368, 385; *Matter of John F.*, 221 AD2d 858, 860, *lv denied* 88 NY2d 811).*

The proof elicited with respect to Clara is similarly unassailable, wholly supporting the finding that "diligent efforts [were made by petitioner] to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]; *see, Matter of*

---

* While we agree with William's assertion that the correspondence between Hathaway and William, as well as notes from the parent aide, were improperly admitted (*see,* CPLR 4518), we find this error "harmless because the record does not indicate that Family Court relied on such statements" (*Matter of Jelenic v Jelenic*, 262 AD2d 676, 678) and other testimony was clearly sufficient to support the determination rendered (*see, Matter of Daniel R. v Noel R.*, 195 AD2d 704, 708).

*Shiann RR.*, 285 AD2d 762). Petitioner offered Clara a wide variety of services; there were referrals to a series of parenting classes, mental health and nonoffender counseling for partners of sexual offenders and numerous homemaker services. Petitioner offered to assist Clara in securing public assistance funds and facilitated all visitation between Clara and her children. Other than visits with her children, petitioner's efforts were either rebuffed or ignored—behaviors which will not undermine a finding that petitioner had engaged in extensive efforts to embark upon a diligent course to encourage and strengthen this parental relationship (*see, Matter of Sheila G.*, *supra* at 385).

Nor do we find that Clara made an effort to plan for her children's futures (*see,* Social Services Law § 384-b [7]). "Good faith alone is not enough: the plan must be realistic and feasible" (*Matter of Star Leslie W.*, 63 NY2d 136, 143, *supra*; *see,* Social Services Law § 384-b [7] [c]). Clara's diluted participation in both parenting classes and counseling, along with her wholesale rejection of petitioner's remaining efforts, comport with her pattern of remaining with sexually abusive paramours despite concrete evidence of their abuse of her children (including her decision to remain with William after Family Court determined that he had sexually abused Dakota). The totality of this evidence wholly supports the finding that she failed to plan for her children's futures. Clara's residence with a series of sexually abusive paramours had already resulted in the suspected sexual abuse of Kyle by one of her former husbands, the admitted sexual abuse of Kyle by one of her former paramours, and the sexual abuse of Dakota by both William and her biological father.

For all of these reasons, there can be no viable contention of error in Family Court's outright rejection of the proposal for a suspended judgment; no view of the evidence or of respondents' histories could be tempered to reflect that such a determination would promote the best interests of these children (*see,* Family Ct Act §§ 631, 633; *see also, Matter of John F.*, 221 AD2d 858, *supra*). Accordingly, we affirm both orders.

Crew III, J.P., Spain, Carpinello and Rose, JJ., concur. Ordered that the orders are affirmed, without costs.