McCarthy, J.
Appeal from an order of the Family Court of St. Lawrence County (Potter, J.), entered February 15, 2012, which granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate Ameillia RR. to be a neglected child.
Respondent Megan SS. (hereinafter the mother) is the mother of Ameillia RR. (born in 2008). Petitioner commenced this proceeding alleging that the mother and respondent Thomas TT., her live-in boyfriend, neglected the child in that they inflicted or allowed to be inflicted numerous bruises on her head and body. The mother served Jered RR. (hereinafter the father), who appeared in the proceeding as a nonrespondent parent (see Family Ct Act § 1035 [d]), with a notice of deposition and a subpoena duces tecum. He moved for a protective order, which Family Court granted.[1] The mother moved to have the child produced for a physical examination. Family Court denied *1084 that motion.[2] After a hearing, the court found that the child was a neglected child and that the mother and Thomas TT. were the persons responsible for that neglect. Family Court issued an order continuing the placement of the child with the father and requiring the mother to observe certain conditions. The mother appeals.
Petitioner established by a preponderance of the evidence that the mother neglected the child. Petitioner established a prima facie case of neglect by submitting proof that the child sustained injuries that would not ordinarily be sustained except due to acts or omissions of a parent or other person responsible for the child’s care (see Family Ct Act § 1046 [a] [ii]; Matter of Philip M., 82 NY2d 238, 243 [1993]). That proof included pictures and testimony concerning bruises to the child’s hands, feet, legs, ears, eye, forehead and back and a cut to her lip. It also included testimony from a physician who examined her and found that the injuries were more likely caused by abuse than accidental, due to the number, sizes, locations and different stages of healing of the bruises. While some of the bruises may have resulted from accidental occurrences, others — such as bruises on the child’s ears and fingertips — were likely caused by nonaccidental means. The physician noted that, from the age of those bruises, they occurred while the child was in the care of the mother and Thomas TT. The mother’s proffered explanations were not all consistent with the type or age of the bruising, and she offered no explanation for certain of the injuries. A caseworker testified that, when she asked the child what happened to her lip, the child stated that Thomas TT. “did it.” An emergency room nurse noted in the medical records that the child stated that she got hurt at Thomas TT.’s house and she injured her lip when he pushed her off a chair.
Once petitioner established a prima facie case, the burden shifted to the mother to provide a reasonable explanation for the injuries (see Matter of Philip M., 82 NY2d at 243; Matter of Sidney FF., 44 AD3d 1121, 1122 [2007]). The mother’s expert pediatrician testified that many of the bruises could be caused by accidental means, but that some were more likely not accidental. The mother and her parents testified that the child’s feet were bruised by dogs stepping on them, that the child was active and bumped into things often, and that she bruised eas *1085 ily. The expert testified that the bruises on the feet were most likely not caused by dogs stepping on the feet, and that finger marks were visible in those bruises. The mother and Thomas TT. testified that the child injured her ears and lip by hitting herself on the wooden rails of a new bed during her sleep. Family Court found incredible most of the proffered nonaccidental explanations for the child’s injuries and the testimony about how and when they allegedly occurred, although the court did find that certain injuries — such as bruises on the legs — were typical for any person to sustain due to everyday activities. Giving deference to those credibility findings, and considering that the mother did not offer reasonable explanations for the child’s injuries, we agree with Family Court’s determination that petitioner established by a preponderance of the evidence that the child was neglected by the mother (see Matter of Izayah J. [Jose I.], 104 AD3d 1107, 1109 [2013]; Matter of Sidney FF., 44 AD3d at 1122).
Family Court properly granted the father’s application for a protective order. The disclosure provisions of CPLR article 31 apply in Family Ct Act article 10 proceedings (see Family Ct Act § 1038 [d]; see also Family Ct Act § 165 [a]; Matter of John H., 56 AD3d 1024, 1026 [2008]). This Court has previously held that, although Family Ct Act article 10 proceedings are special proceedings, the specific provisions of that article “override the general discovery limitations placed on special proceedings under CPLR 408,” which requires leave of court for any disclosure (Matter of John H., 56 AD3d at 1026; see Family Ct Act § 1038 [d]). While leave of court was not required here, disclosure was only available from the father — a nonparty— without a court order if the mother established the existence of “special circumstances, namely that the information sought !is material and necessary and cannot be discovered from other sources or otherwise is necessary to prepare for trial’ ” (Parnes v Parnes, 80 AD3d 948, 953 [2011], quoting King v State Farm Mut. Auto. Ins. Co., 198 AD2d 748, 748 [1993]; see CPLR 3101 [a] [4]). In an abuse or neglect case, “[i]n determining any motion for a protective order, the court shall consider the need of the party for the discovery to assist in the preparation of the case and any potential harm to the child from the discovery” (Family Ct Act § 1038 [d]).
The father informed Family Court and the parties that he had already turned over to petitioner all of the documents and photographs sought in the subpoena, such that he no longer had any responsive documents in his possession and the information could be obtained from another source, namely peti *1086 tioner, which is a party. Petitioner indicated that its disclosure response was nearly complete at that time. Family Court issued a protective order, but did so without prejudice. The mother could have sought disclosure from the father after receiving petitioner’s discovery responses, if indeed she learned that the father had information that was not available from another source and was necessary for her to prepare for trial. We cannot say that the court abused its discretion in granting the protective order without prejudice, especially considering that the mother did not seek further relief after determining whether the information was available from a source other than the father (see CPLR 3101 [a] [4]; 3103 [a]; Family Ct Act § 1038 [d]; Parnes v Parnes, 80 AD3d at 953; Sand v Chapin, 246 AD2d 876, 877 [1998]).
Family Court did not abuse its discretion in denying the mother’s request to produce the child for a physical examination. In determining a motion for an order directing that a child be made available for a medical examination, “the court shall consider the need of the respondent or child’s attorney for such examination to assist in the preparation of the case and the potential harm to the child from the examination” (Family Ct Act § 1038 [c]). “The statute places the burden on the court to exercise sound judgment after weighing all the factors bearing on the potential benefit to the applicant and the truth-finding process, if both sides are able to present experts who have examined the child, and the potential harm to the child which may result from the additional exam” (Matter of Jessica R., 78 NY2d 1031, 1034 [1991]). In support of her motion, the mother submitted her own and her mother’s affidavits stating that they and the child all bruise easily. The mother also submitted the affidavit of a physician who had been shown photographs of the child’s bruises and been supplied an overview of the facts by the mother’s counsel. This physician noted that unexplained bruising in a three-year-old child is cause for concern and, while he could not rule out “covert abuse” as a possibility, he also could not rule out a number of serious medical conditions that might cause bruising. He listed approximately 15 such conditions, noting that bruising easily can be an inherited trait and the mother and grandmother also reported that they bruise easily. The physician then opined that a child of this age who has a “history of bruising that is not explained by trauma should be screened by a pediatrician” to determine whether the child does bruise easily and, if so, medical tests should be performed.
While proof of a medical condition that causes bruising could be important to a respondent’s defense against allegations of *1087 neglect or abuse (see Matter of Julia BB. [Diana BB.], 42 AD3d 208, 211-214 [2007], lv denied 9 NY3d 815 [2007]), a medical examination is not available every time it is requested; the respondent making such an application must put forth some evidence to show that an examination is necessary under the circumstances. As Family Court noted, the mother and grandmother indicated that they often get bruises, but some of that bruising was explained by the circumstances (such as a bruise occurring after bumping into a box or walking into a chair), and it was unclear if they actually bruised more easily than the general population. The mother did not submit the child’s medical records, even though, as the parent, she presumably could have obtained copies of those records. The physician, therefore, did not review the child’s medical records before issuing his opinion. Instead, the physician relied on counsel’s overview of the facts, without stating in his two-page affidavit what the physician understood those facts to be, and noting that his opinion was “based on . . . limited information” and offered on the assumption that the facts provided by the mother’s counsel were accurate. That opinion noted that bruising can be an inherited trait, but neither the mother nor grandmother indicated that she had ever been diagnosed with any medical condition related to bruising, nor did the mother indicate that she submitted to any testing herself before applying to have her child subjected to testing. The physician also did not explain what would be involved in the screening or medical testing that may be required in relation to any of the 15 conditions he mentioned, which he stated was not an exhaustive list.
The physicians who petitioner called to testify were the emergency room doctor who examined the child once and the child’s regular pediatrician. These medical professionals were not retained experts who examined the child for purposes of litigation, but were fact witnesses who had examined the child for treatment purposes and offered their medical opinions based on their observations. As stated above, prior to the hearing, the mother presumably had access to the child’s pediatrician — who was not adverse to the mother and testified to never having noticed any unexplained injuries during the child’s entire life— and could have raised the bruising issue with the pediatrician at any time in the child’s life, but did not. Petitioner’s medical witnesses performed external physical exams, but did not do any other types of testing. The conditions listed by the physician who was consulted by the mother’s counsel all appear to be conditions affecting the blood or internal organs. Testing for such conditions would presumably involve at least the drawing of blood. Family Court considered the speculative and conclusory *1088 nature of the mother’s application, her failure to even obtain the child’s medical records before making that application, and the potential pain that the child may have been subjected to as a result of testing for a host of possible medical conditions. After balancing the necessity of the examination and possible benefit to the mother with the potential harm to the child, the court did not abuse its discretion by denying the mother’s request for a physical examination of the child (see Matter of Keith JJ., 295 AD2d 644, 646 [2002]; Matter of Commissioner of Social Servs. of City of N.Y. v Edyth W., 210 AD2d 328, 329 [1994]; compare Matter of Fatima M., 16 AD3d 263, 273 [2005]).
Rose, J.E, Spain and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.

. Although the mother appealed that order, Family Court issued its dispositional order in this case before that prior appeal was perfected. While the interlocutory appeal was thus rendered moot, issues regarding that order *1084 can be raised on this appeal from the final determination in the proceeding (96 AD3d 1244 [2012]).

. The mother appealed from that order. This Court also found that appeal moot, but noted that issues surrounding that order can be raised in the instant appeal (95 AD3d 1525 [2012]).