■ In the Matter of ELIAS P. EDWIN GOULD SERVICES FOR CHILDREN AND FAMILIES et al., Respondents; FERMAN P., Appellant. (Proceeding No. 1.) In the Matter of FERMAN P. EDWIN GOULD SERVICES FOR CHILDREN AND FAMILIES et al., Respondents; FERMAN P., Appellant. (Proceeding No. 2.) In the Matter of MELISSA P.-M. EDWIN GOULD SERVICES FOR CHILDREN AND FAMILIES et al., Respondents; FERMAN P., Appellant. (Proceeding No. 3.) In the Matter of JOSE E.P.M. EDWIN GOULD SERVICES FOR CHILDREN AND FAMILIES et al., Respondents; FERMAN P., Appellant. (Proceeding No. 4.) [44 NYS3d 516]—

Appeals from four orders of fact-finding and disposition of the Family Court, Queens County (Marybeth S. Richroath, J.), dated September 2, 2015. The orders of fact-finding and disposition (one as to each child), after fact-finding and dispositional hearings, found that the father permanently neglected the four subject children, terminated his parental rights, and transferred guardianship and custody of the children to the petitioner, Edwin Gould Services for Children and Families, and the Administration for Children's Services of the City of New York for the purpose of adoption.

Ordered that the orders of fact-finding and disposition are affirmed, without costs or disbursements.

This appeal concerns the termination of the father's parental rights with respect to four children. In 2007, the Administration for Children's Services (hereinafter ACS) filed neglect petitions against the mother with respect to three of the children, who were initially removed from their intact family based upon allegations that the mother, who suffered from mental illness, threatened to harm them. The Family Court released the children to the custody of the father, who was not charged with neglect. An order of protection was issued, barring the mother from the home. When it was discovered that the father had allowed the mother into the home, neglect petitions were filed against him, and the children were removed from his care. In 2010, the three children were returned on a trial basis to the

parents based on findings that the mother had been compliant with mental health services, but were removed again only a short time later, in September 2010, after one of the children, while in the mother's care, sustained burns so severe that she was hospitalized for two weeks and required skin graft operations and subsequent home care and therapy. The fourth child, who was born in September 2010, was removed from the parents on October 1, 2010. All four of the children have remained in foster care since they were removed from the parents in September and October 2010.

A service plan was put in place after the removals, and, in 2011, neglect findings were entered against both the mother and the father. The father was directed to visit with the children regularly and cooperate with all ACS referrals. In December 2011, the mother filed a family offense petition against the father, alleging domestic violence. On April 17, 2012, more than 1¹/₂ years after the children were removed, the father was arrested and incarcerated for allegedly violating a temporary order of protection relating to the mother. Approximately two months later, in June 2012, he was deported to Mexico. The domestic violence charges were subsequently dismissed, on the merits.

On July 24, 2012, approximately one month after the father was deported, the petitioner, Edwin Gould Services for Children and Families, commenced these proceedings pursuant to Social Services Law § 384-b to terminate the parental rights of both parents on the ground of permanent neglect. The petitions against the mother were eventually dismissed after she and the petitioner reached an agreement, under which the mother conditionally surrendered her parental rights to the four children under Social Services Law § 383-c in exchange for post-adoption visitation with them. The proceedings, however, continued as to the father.

As relevant to these appeals, the petitions alleged that after the four children were placed with the petitioner in 2010, the father, for a period of more than a year, had failed substantially and continuously or repeatedly to maintain contact with them or plan for their future, despite the petitioner's diligent efforts to encourage and strengthen the parental relationship. On October 15, 2014, after a fact-finding hearing, the Family Court found that the father had permanently neglected the children. The court then held a dispositional hearing, at which the father testified by telephone. Following that hearing, the court found that it was in the children's best interests that they be freed for adoption. By four orders of fact-finding and disposition

dated September 2, 2015 (one as to each child), the Family Court, inter alia, terminated the father's parental rights and transferred guardianship and custody of the children to the petitioner and ACS for the purpose of adoption. The father appeals from those four orders.

With respect to fact-finding, the record supports the Family Court's determinations that the petitioner established by clear and convincing evidence that the children were permanently neglected children. Social Services Law § 384-b (7) provides that a " 'permanently neglected child' shall mean a child who is in the care of an authorized agency and whose parent or custodian has failed for a period of either at least one year or fifteen out of the most recent twenty-two months following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child" (Social Services Law § 384-b [7] [a]). The Family Court properly found that the petitioner met its burden of establishing that it made "diligent efforts to encourage and strengthen the parental relationship" with respect to the father (id.; see Matter of Sheila G., 61 NY2d 368, 380-381 [1984]). In particular, the petitioner established that it made reasonable attempts to assist, develop, and encourage a meaningful relationship between the father and the children, including by scheduling family team conferences to review the service plan with the father and formulate a feasible plan for reunification, discussing the importance of compliance with the service plan, facilitating visitation between the father and the children, and referring the father to individual therapy, parenting skills classes, and domestic violence counseling (see Social Services Law § 384-b [7]; Matter of Daniel K.L. [Shaquanna L.], 138 AD3d 743, 744 [2016]; Matter of Nay'amya W.R. [Kiara D.], 135 AD3d 770 [2016]; Matter of Chanel C. [Vanessa N.], 118 AD3d 826 [2014]; Matter of Tashameeka Valerie P. [Priscilla P.], 102 AD3d 614, 615 [2013]).

The record also supports the Family Court's findings that, despite the petitioner's diligent efforts, the father failed to realistically plan for the children's future. Notably, "[a] default in performing either may support a finding of permanent neglect" (Matter of Star Leslie W., 63 NY2d 136, 142-143 [1984]; see Matter of Gregory B., 74 NY2d 77, 87 [1989]). Although the case planner testified at the fact-finding hearing that the father

visited with the children until at least shortly before his arrest, the planning requirement "presupposes, at a minimum, that the parents take steps to correct the conditions that led to the removal of the child from their home" (*Matter of Leon RR*, 48 NY2d 117, 125 [1979]). It also contemplates that the parent will "formulate, and act to accomplish, a feasible and realistic plan" (*Matter of Orlando F.*, 40 NY2d 103, 110 [1976] [internal quotation marks omitted]), and "take such steps as are necessary to provide a home that is adequate and stable, under the financial circumstances existing, within a reasonable period of time" (*Matter of Star Leslie W.*, 63 NY2d at 143). Here, the court properly found that the father, despite being physically and financially able to comply with the service plan the petitioner had established for him, failed to do so (*see Matter of Amanda P.S. [Frances C.]*, 133 AD3d 861, 862 [2015]). Under the initial service plan, the father was required not only to visit the children regularly, but also to complete individual therapy and a parenting skills course. The father was aware of the need to follow through with the services to which he was referred, and of the possible consequences of failing to do so. Nevertheless, he completed neither the therapy nor the course, even though the petitioner provided multiple referrals and attempted to accommodate his work schedule. Although there was conflicting testimony as to whether the father completed a parenting skills class, the court credited the father's own testimony that he had not completed such a class. We find no basis to disturb the Family Court's credibility assessments, to which we must accord considerable deference (*see Matter of Derrick D.A. [Shavonna L.L.D.]*, 134 AD3d 928, 929 [2015]; *Matter of Mekhi Kahalil G. [Ainsley M.J.]*, 99 AD3d 1003, 1004 [2012]; *Matter of Anthony S. [Dawn N.]*, 98 AD3d 519, 520 [2012]).

In finding that the father had permanently neglected the children, the Family Court concluded that the father "never came to grips with the notion that it was necessary for him to plan successfully for these children, [and] that he plan[ ] separately from the mother." This followed from, among other evidence, the case planner's testimony that there was a three-month period of time during which she lost all contact with the father and was unable to reach him in the winter of 2012. In sum, based on the evidence at the fact-finding hearing, the Family Court properly found that the children are permanently neglected children within the meaning of Social Services Law § 384-b (7) (*see generally Matter of Daniel K.L. [Shaquanna L.]*, 138 AD3d 743 [2016]; *Matter of Elasia A.D.B. [Crystal D.G.]*, 118 AD3d 778, 779 [2014]; *Matter of Travis G. [Carmen M.]*, 117 AD3d 1049 [2014]).

As to the final month of the statutory period—between the father's deportation in June 2012 and the filing of the petitions in July 2012 (*see* Social Services Law § 384-b [7])—the Family Court noted that the father did not get in contact with the children, even though his sister remained in New York and she had some contact with them. The father himself admitted that he had not reached out to the case planner after he was deported.

The record also supports the Family Court's determination as to disposition. At a dispositional hearing on a petition to terminate parental rights, the court's only concern is the best interests of the child (*see* Family Ct Act § 623; *Matter of Hailey ZZ. [Ricky ZZ.]*, 19 NY3d 422, 429 [2012]; *Matter of Star Leslie W.*, 63 NY2d at 147), "and there shall be no presumption that such interests will be promoted by any particular disposition" (Family Ct Act § 631).

The record reflects that by the time of the dispositional hearing, the father had a home in Mexico for the children. He presented a "Socioeconomic Report" from a local office of the Mexican "Office of the Attorney for Advocacy of Children, Women and Family Affairs," which found his arrangements for the children suitable as of March 3, 2015. Nevertheless, the evidence also established that the father had had only infrequent and irregular contact with the children after he was deported. The case planner testified that the three oldest children, who had been in the foster mother's care for almost five years, since September 2010, did not want to go to Mexico and did not want any contact with the father. Further, there was evidence at the dispositional hearing that the three older children had significant educational issues that continued at least through 2014. Although the father established that he could provide schooling for the children, he did not address the children's special needs.

Finally, the children had bonded with the foster parent, with whom they had lived for five years and who desired to adopt them. Further, the foster parent was supportive of continuing the visitation that the children enjoyed with the mother. Under these circumstances, the Family Court properly determined that it was in the best interests of the children that the father's parental rights be terminated and that the children be freed for adoption by the foster parent (*see Matter of Xiomara D. [Faith D.]*, 141 AD3d 585 [2016]; *Matter of "Baby Boy" E.*, 42 AD3d 536 [2007]; *Matter of Juanita F.*, 291 AD2d 496 [2002]). Balkin, J.P., Dickerson and Brathwaite Nelson, JJ., concur.

Hinds-Radix, J., dissents, and votes to reverse the orders ap-

pealed from, on the law, and to dismiss the petitions against the father, with the following memorandum: The father challenges the termination of his parental rights to his four children, based upon a finding of permanent neglect, for failure to plan for the children for more than one year after their placement in foster care. Because I disagree with the conclusion of my colleagues in the majority that the Family Court properly found that the father failed to plan for his children, I respectfully dissent.

According to the petitioner's case planner, after the children were placed in foster care, the father visited them on a regular basis before his arrest, and completed a parenting skills course. After a conversation with the mother, wherein the mother alleged that the father committed domestic violence against her, the case planner referred the father to individual therapy, without a psychological evaluation to determine whether he suffered from any psychological issues. He was also referred to a domestic violence program. When the father did not attend the domestic violence program because he claimed that it conflicted with his work schedule, he was referred to another domestic violence program in April 2012.

Also in April 2012, the father was arrested in the courthouse based upon the mother's allegations of domestic violence, and deported to Mexico in June 2012. A petition to terminate his parental rights was filed a month later. The family offense proceeding filed with respect to the mother's allegations of domestic violence was ultimately dismissed on the merits. At the dispositional hearing relating to the termination of the father's parental rights, the petitioner took the position that the dismissal of the family offense proceeding was not relevant, because the agency acted in good faith based upon the information available to it.

The father testified that after he was deported to Mexico, he was unable to contact the children because he did not have his own telephone, and when he was able to telephone the foster mother, she would not speak to him, apparently because the foster mother did not speak or understand Spanish, and the eldest child—who was the only one in her household who understood Spanish—refused to act as translator.

The father did speak to the children when his sister had agency visits with them. The father suggested his sister as a potential resource for the children, but she was rejected as a viable resource, because her living situation was deemed unsuitable and she was undocumented, and because of her financial situation.

Prior to his deportation, the father maintained an apartment in Queens, which the case planner attempted to visit on one occasion, but was denied access, apparently because the father was not home. At the time the termination of parental rights petitions against him were filed, he lived in a home in Mexico with multiple bedrooms sufficient to accommodate the children. He supported himself working in construction and as a farmer, and he had enough food and income to support the children. His goal was to obtain custody of the children in Mexico. His home in Mexico passed a home inspection by Mexican authorities.

The mother executed a voluntary surrender of her parental rights, on condition that she have continued contact with the children, which included unsupervised visitation. After the fact-finding and dispositional hearing, the father's parental rights were terminated based upon permanent neglect.

"[N]eglect may be found only after it is established that the parent has failed substantially and continuously or repeatedly to maintain contact with or plan for the future of the child although physically and financially able to do so (Social Services Law, § 384-b, subd 7, par [a]). The requirement is several: the parent must maintain contact with the child and also realistically plan for [his or] her future. A default in performing either may support a finding of permanent neglect" (Matter of Star Leslie W., 63 NY2d 136, 142-143 [1984]).

In this case, the mother's conduct forced the breakup of the family, and thereafter sabotaged the father's efforts to plan for the children. The petitioner, acting upon the mother's charges of domestic violence, which were later dismissed, modified the father's service plan. The father was unable to complete that service plan, at least in part because he was incarcerated based upon those allegations, and later deported.

The petitioner failed to establish by clear and convincing evidence that the father neglected the children by failing to plan for their future. Rather, the record supports the conclusion that the father planned for the future of the children to the extent that he was physically and financially able to do so (see Matter of Winstoniya D. [Tammi G.], 123 AD3d 705, 706 [2014]). The petitioner's assertion that it acted in good faith based upon the information available to it was insufficient to meet the petitioner's burden.

In view of the foregoing, the petitions to terminate the father's parental rights should have been dismissed.